## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **MANIKANTA PASULA, LIKHITH BABU GORRELA, THANUJ KUMAR GUMMADAVELLI, HANGRUI ZHANG,** and **HAOYANG AN**, on behalf of themselves and all those similarly situated, | |
| **Plaintiffs,** | No. _____ |
| **v.** | |
| **U.S. DEPARTMENT OF HOMELAND SECURITY**; | |
| **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**; | |
| **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, BOSTON FIELD OFFICE**; | |
| **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MANCHESTER SUB-FIELD OFFICE**; | |
| **KRISTI NOEM**, Secretary of the Department of Homeland Security; | |
| **TODD LYONS**, Acting Director of the Immigration and Customs Enforcement; | |
| **Defendants.** | |

## <u>CLASS COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

## INTRODUCTION

1.      Since at least March 1, 2025[1], Defendant United States Department of Homeland Security ("DHS") and their agents (collectively, "Defendants") began, for unknown and unspecified reasons, unilaterally terminating the F-1 student status of hundreds, if not thousands, of international students and Optional Practical Training ("OPT") participants throughout the United States and then reflecting that termination in the SEVIS [Student and Exchange Visitor Information System] system.[2]   As of April 10, 2025, *NAFSA: Association of International Educators* estimated that more than 800 international students' and scholars' status in the SEVIS system had been terminated nationwide.[3]   This number has grown rapidly since then.   *Inside Higher Ed* estimates that, as of April 17, 2025, over 240 colleges and universities have identified 1,480-plus international students and recent graduates who have had their legal status changed.[4]

2.      This lawsuit only challenges Defendants' termination of student status.   While Defendants' reasons for these mass terminations of student status are unclear, what is clear is that

---

[1] On March 27, Secretary of State Marco Rubio said the State Department had revoked 300 or more student visas *since approximately early March* claiming these students were "lunatics" not in the United States just to study, but to engage in activism.   *See* Daniella Silva, Chloe Atkins, Julia Ainsley and Abigail Williams, "Trump takes aim at foreign-born college students, with 300 visas revoked," *NBC News* (Mar. 27, 2025), https://www.nbcnews.com/news/us-news/trump-administration-takes-aim-immigrant-students-rcna198346;   Marc Caputo, "Exclusive: Trump's 'pro-Hamas' purge could block foreign students from colleges," Axios.com (Mar. 27, 2025), https://www.axios.com/2025/03/27/trump-palestinian-hamas-purge-colleges-protests ("More than 300 foreign students have had their student visas revoked in the three weeks 'Catch and Revoke' has been in operation, the official said. There are 1.5 million student visa-holders nationwide.").

[2] Elizabeth Román, "5 Umass Amherst students have visas revoked," *NHPR* (Apr. 5, 2025), https://www.nhpr.org/2025-04-05/5-umass-amherst-students-have-visas-revoked; Katy Stegall and Esmeralda Perez, "Five USCD students' visas revoked and additional person deported, university confirms," *CBS8* (Apr. 5, 2025), https://www.cbs8.com/article/news/local/five-ucsd-students-f-1-visas-revoked-additional-deported/509-2c257e52-4a31-42f7-8e3e-f6bd92a287b3; Molly Farrar, "Feds quietly revoke visas of multiple Umass, Harvard students," *Boston.com* (Apr. 6, 2025), https://www.boston.com/news/local-news/2025/04/06/feds-quietly-revoke-visas-of-multiple-umass-harvard-students/.

[3] Erica L. Steward, "NAFSA Releases Initial Analysis of Visa Revocations and other Actions Targeting International Students and Scholars," *NAFSA* (Apr. 10, 2025), https://www.nafsa.org/reports-of-actions-targeting-international-students?fbclid=IwZXh0bgNhZW0CMTEAAR5GZENs_RyxYI5MAoN78Xe9b5PHOe21t7SWC5wOXzXCyZSJ3XGOdpLp1xR3Tw_aem_xbIT2XvJBYzdE17DPvcKMg.

[4] Inside Higher Ed, "International Student Visas Revoked," https://www.insidehighered.com/news/global/international-students-us/2025/04/07/where-students-have-had-their-visas-revoked.

these terminations—across the board—flout the applicable regulations governing student status termination (*see* 8 C.F.R. § 214.1(d)) and the regulations governing failure to maintain student status (*see* 8 C.F.R. § 214.1(e)-(g), 8 C.F.R § 214.2(f)).

3.     Plaintiffs Manikanta Pasula, Likhith Babu Gorrela, Thanuj Kumar Gummadavelli, Hangrui Zhang, Haoyang An, and the proposed class members are students affiliated with educational institutions in New Hampshire, Maine, Massachusetts, Rhode Island, and Puerto Rico affected by Defendants' unilateral and unlawful termination of F-1 student status. As of April 11, 2025, New Hampshire, Maine, Massachusetts, Rhode Island, and Puerto Rico have at least 112 students whose F-1 student status has been terminated.[5]  For example, on April 9, 2025, Thanuj Kumar Gummadavelli was informed by his university that his F-1 student status was terminated because his SEVIS record specifically indicated "*Failure to Maintain Status*: Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." (emphasis added).  In other words, Defendants were clear that his student status was terminated.

4.     Indeed, Thanuj was not the only student whose SEVIS record indicated that the student failed to maintain status.  This failure to maintain status based SEVIS termination was systematic and occurred throughout the United States.

5.     In a few days, Defendants changed the description of the SEVIS termination reason and deleted "failure to maintain status" from the reason and replaced it with "other."

6.     On or April 9, 2025, Defendants also updated their public SEVIS website to include the new "Other" category in the termination reason category.[6]  The previous version (dated Dec. 3, 2024) did not have such a category for termination reasons.

---

[5] Danny McDonald, et al., "Trump is revoking student visas.  How many foreign students are there in New England?," *The Boston Globe* (Apr. 11, 2025), https://www.bostonglobe.com/2025/04/11/metro/student-visas-massachusetts-new-england/.

[6] https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons.

7.     The consequences of Defendants' unilateral and unlawful termination are dire.  The termination puts students out of lawful student status.  Plaintiffs and the class face immigration detention and deportation.[7]  Plaintiffs and the class face severe financial and academic hardship.  Further, Plaintiffs and the class are not able to obtain their degrees and work pursuant to the Optional Practical Training (OPT) program after graduation.  Indeed, Defendants' unilateral and unlawful terminations have severely disrupted the educational opportunities of students who are in the middle of their studies (and in the middle of a semester) and who are simply trying to obtain, often at considerable expense, an education in the United States while following all the rules required of them.

8.     These injuries are real.  Plaintiff Linkhith Babu Gorrela's graduation date for his Master's program is May 20, 2025.  Without a valid F-1 student status, he may not obtain his Master's degree.  Nor can he participate in the OPT program after graduation.  Plaintiff Hangrui Zhang's only source of income is his research assistantship, which has been cut off in light of the termination of his F-1 student status.  Plaintiff Haoyang An will have to abandon his Master's program despite having already invested $329,196 in his education in the United States.  Similarly, Plaintiff Thanuj Kumar Gummadavelli and Plaintiff Manikanta Pasula have only one semester left before they can complete their Master's degrees and participate in the OPT program.  Their graduation is unpredictable and unlikely unless this Court intervenes.

9.     Regulations specifically delineate the ways international students may lose their F-1 student status.

---

[7] *See* Samantha Davis, "Marshall resident detained by ICE on student visa," *Marshall Independent* (Apr. 14, 2025), ("Aditya Wahyu Harsono, a 33-year-old resident of Marshall and Indonesian citizen, was arrested by U.S. Immigration and Customs Enforcement (ICE) agents on March 27. He was in the United States on an active F-1 student visa, which was revoked without warning four days prior to his detainment."), https://www.marshallindependent.com/news/local-news/2025/04/marshall-resident-detained-by-ice-on-student-visa/.

10.    Under 8 C.F.R. § 214.1(d), DHS may only initiate termination of student status "1) by revoking a waiver that the Attorney General had previously authorized under § 212(d)(3) or (4) of the Immigration and Nationality Act; 2) 'by the introduction of a private bill to confer permanent resident status,' or 3) 'pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons.'" *Jie Fang v. Dir. United States Immigration & Customs Enforcement*, 935 F.3d 172, 176 (3d Cir. 2019).  As it relates to the entire class, none of these criteria has been satisfied, yet their student status has been terminated anyway.

11.    F-1 student status can also be terminated (and then subsequently reflected in the SEVIS system) if students fail to maintain their status.  Under 8 C.F.R. § 214.2(f)(5), an international student does not maintain status if the student fails to make "normal progress toward completing a course of study."  In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder—such as engaging in "[a]ny unauthorized employment[,]" "willful failure to provide full and truthful information requested by DHS[,]" and "conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed"—constitute "a failure to maintain [student] status[.]"  However, none of these conditions under either 8 C.F.R. § 214.2(f)(5) or 8 C.F.R. § 214.1(e)-(g) occurred for the class who have had their student status unilaterally revoked.  These class members have made "normal progress toward completing a course of study" under 8 C.F.R. § 214.2(f)(5).  And the conditions of 8 C.F.R. § 214.1(e)-(g) have not been met.  These students have not been convicted of any crimes of violence.  They have not engaged in any unauthorized employment.  And they have not provided any false information to DHS.

12.    In terminating the F-1 student status of Plaintiffs and proposed class members, Defendants have not provided any notice or sufficient explanation as to which regulation(s)

Defendants were relying on for the termination determination.  Instead, Defendants included general notations in the SEVIS record such as "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."

13.    Plaintiffs and proposed class members have maintained their student status by making progress toward completing their course of study, not engaging in unauthorized employment, and not having any conviction for a crime of violence for which a sentence of more than one year imprisonment may be imposed.

14.    The only criminal matters the individual Plaintiffs have encountered are either dismissed non-violent misdemeanor charges or driving without a valid U.S. driver's license (but using an international or foreign driver's license).  None of these incidents constitutes a conviction of a crime of violence with a potential sentence of more than a year.  *See* 8 C.F.R. § 214.1(g).

15.    None of the three circumstances under 8 C.F.R. § 214.1(d) have occurred to Class Plaintiffs and the proposed class.

16.    This unilateral termination by DHS without consulting with the Designated School Officials (DSO) at each school is unprecedented.  It has been the practice of DHS to consult with DSOs to terminate foreign students' F-1 student status in the SEVIS record.

17.    At the most elemental level, the United States Constitution requires notice and a meaningful opportunity to be heard.  *See Choeum v. I.N.S.*, 129 F.3d 29, 38 (1st Cir. 1997) ("At the core of [a noncitizen's] . . . due process rights is the right to notice and the nature of the charges and a meaningful opportunity to be heard."); *see also, Matthews v. Eldridge*, 424 U.S. 319, 322 (1976).  Plaintiffs and proposed class members have received no such process.

18.    To be clear, Plaintiffs and proposed class members do _not_ challenge the revocation

of their F-1 _visa_ in this case, even assuming that their visas were actually revoked.  Instead,

Plaintiffs and class members bring this lawsuit to challenge DHS's unlawful termination of their

F-1 student status.[8]  Indeed, the revocation of an F-1 visa does _not_ constitute a failure to maintain

F-1 student status and, therefore, cannot serve as a basis for termination of F-1 student status.  Once

again, for the agency-initiated termination of F-1 student status, DHS's ability to terminate F-1

student status "is limited by [8 C.F.R.] § 214.1(d)." _Jie Fang_, 935 F.3d at 185 n.100.  Under 8

C.F.R. § 214.1(d), DHS can terminate F-1 student status _only_ when: (1) a previously granted

waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent

residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register

identifying national security, diplomatic, or public safety reasons for termination.  In other words,

under this regulation, the revocation of an F-1 visa does not provide a basis to terminate F-1 student

status.  DHS's own policy guidance confirms that "[v]isa revocation is _not_, in itself, a cause for

termination of the student's SEVIS record."  ICE Policy Guidance 1004-04 – Visa Revocations

(June 7, 2010) (emphasis added).[9]  Rather, if the visa is revoked, _the student is permitted to pursue_

_his course of study in school_, but upon departure, the SEVIS record is terminated, and the student

must obtain a new visa from a consulate or embassy abroad before returning to the United States.

_See_ Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).[10]  If

DHS seeks to terminate F-1 student status (and then reflect said termination in the SEVIS system)

---

[8] There is a difference between an F-1 student visa and an F-1 student status.  "A student visa is a travel document [an international student] receive[s] from a U.S. consulate or embassy before [he or she] enter[s] the United States.  [A] student status is what [he or she] must maintain after [the student] [is] granted entrance into the United States."  Blog, "STUDENT VISA VS. STUDENT STATUS: WHAT IS THE DIFFERENCE?," _the Department of Homeland Security_ (Jan. 27, 2016), https://studyinthestates.dhs.gov/2016/01/student-visa-vs-student-status-what-difference.
[9] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.
[10] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

after—or independent of—revocation of an F-1 visa, DHS must comply with 8 C.F.R. § 214.1(d). *See Jie Fang*, 935 F.3d at 185 n.100.  DHS has not done so here.

## JURISDICTION AND VENUE

19.     Jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (federal defendant),  and 5 U.S.C. § 701 *et seq* (Administrative Procedure Act).

20.     Defendants have waived their sovereign immunity.  5 U.S.C. § 702.

21.     Venue is proper in the District of New Hampshire under 28 U.S.C. § 1391 as Plaintiffs Manikanta Pasula, Likhith Babu Gorrela, and Thanuj Kumar Gummadavelli reside in New Hampshire.  Further, one of Defendants resides in this district.

## PARTIES

22.     Plaintiff Manikanta Pasula is a native and citizen of India who currently resides in New Hampshire.  He is an F-1 student at Rivier University in New Hampshire.  He came to the United States under an F-1 visa for a Master's program in computer science.  He is in the middle of his third semester at the university and has one more semester before he can get his degree and also apply for his OPT in the field of computer science.  He learned that the State Department revoked his visa on April 4, 2025.  The University also told him that his SEVIS record was terminated and therefore he was out of status.  On April 10, 2025, he separately received an email from the U.S. Consulate General, Mumbai, which confirmed the visa revocation and indicated that "[r]emaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation."  This termination will affect his ability to successfully complete his academic program and pursue OPT, which is an essential part of his career development and future plans.

23.     Plaintiff Likhith Babu Gorrela is a native and citizen of India who currently resides in New Hampshire.  He is an F-1 student at Rivier University in New Hampshire.  He came to the

United States in 2023 to study for his Master's degree program in computer and information systems. He learned that his F-1 student status was terminated on April 4, 2025. On April 8, 2025, he received an email from the U.S. Embassy in India that his F-1 visa was also revoked. In light of the termination of his student status, his plan of completing his Master's program is in jeopardy. The anticipated graduation date for his Master's program is May 20, 2025.

24.    Plaintiff Thanuj Kumar Gummadavelli is a native and citizen of India who currently resides in New Hampshire. He is an F-1 student at Rivier University in New Hampshire. He entered the United States in December 2023 to begin his Master's program in computer science. However, on April 9, 2025, Thanuj received an email from Rivier University that _his F-1 student status was terminated_. In light of the termination, his plan of graduating and completing his Master's program is in jeopardy.

25.    Plaintiff Hangrui Zhang is a native and citizen of China who currently resides in Massachusetts. He is an F-1 student at Worcester Polytechnic Institute in Massachusetts. He entered the United States in August 2023 to begin his Ph.D. program in electronic and computer science. He has kept a GPA of 4.0 out of 4.0. However, he learned that his F-1 student status was terminated on April 9, 2025. In light of the termination, his plan of completing his Ph.D. program is in jeopardy and, while the termination is in place, he cannot work or engage in research as a research assistant, which is his sole source of income.

26.    Plaintiff Haoyang An is a native and citizen of China who currently resides in Massachusetts. He is an F-1 student at Worcester Polytechnic Institute in Massachusetts. He first came to the United States in 2018 as an undergraduate to study at the University of Connecticut. After obtaining his Bachelor of Arts in Applied Mathematics, he continued his studies for his Master's program at Boston University. With the Master of Science in Applied Business Analytics,

he started his second Master's degree at Worcester Polytechnic Institute, with the plan to apply for a Ph.D. at the same university upon conclusion of his Master's program. He learned that his F-1 student status was terminated on April 9, 2025.  In light of the termination, his plan of completing his Master's program and pursuing his Ph.D. program is in jeopardy.

27.    Defendant U.S. Department of Homeland Security ("DHS") is the federal agency responsible for F-1 student status management and is an agency within the meaning of the APA, 5 U.S.C. § 551(1).  DHS oversees its component agencies, including U.S. Immigration and Customs Enforcement.

28.    Defendant U.S. Immigration and Customs Enforcement ("ICE") is the federal agency responsible for F-1 student status management and is an agency within the meaning of the APA 5 U.S.C. § 551(1).  ICE runs the Student and Exchange Visitor Program ("SEVP"), which "acts as a bridge for government organizations that have an interest in information on nonimmigrants whose primary reason for coming to the United States is to be students."[11]

29.    Defendant U.S. Immigration and Customs Enforcement, Boston Field Office is a field office of ICE and is an agency within the meaning of the APA 5 U.S.C. § 551(1).[12]  The Boston Field Office has an area of responsibility for Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, and Vermont.  The Boston Field Office is responsible for immigration enforcement, including detention, removal, and investigation, that occurs in New England.

30.    Defendant U.S. Immigration and Customs Enforcement, Manchester Sub-Field Office is a sub-field office of ICE and is an agency within the meaning of the APA 5 U.S.C. § 551(1).[13]  The Manchester Sub-Field Office has an area of responsibility for New Hampshire.  The

---

[11] https://www.ice.gov/sevis; https://studyinthestates.dhs.gov/site/us-immigration-and-customs-enforcement.
[12] https://www.ice.gov/field-office/boston-field-office.
[13] https://www.ice.gov/node/62055.

Manchester Sub-Field Office is responsible for immigration enforcement, including detention, removal, and investigation, that occurs in New Hampshire.  Here, three Class Plaintiffs and class members in New Hampshire face immigration detention and deportation due to their loss of student status.

31.    Defendant Kristi Noem is the Secretary of the Department of Homeland Security. She is sued in her official capacity.

32.    Defendant Todd Lyons is the Acting Director of the ICE.  He is sued in his official capacity.

## FACTS

### Background on F-1 Student Visa and Status

33.    Noncitizens can enroll in government-approved academic institutions as F-1 students.  *See* 8 U.S.C. § 1101(a)(15)(F).  Students enter the United States on an F-1 visa issued by the U.S. Department of State.  Since they enter the United States with an F-1 visa, students are granted F-1 student status and permitted to remain in the United States for the duration of status (D/S) if the student continues to meet the requirements established by the regulations governing the student's visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment.  DHS's Student and Exchange Visitor Program (SEVP) is in charge of administering the F-1 student program and tracking information on students in F-1 student status.

34.    An academic institution must obtain formal approval from DHS before it can sponsor a student's F-1 status.  An institution must first file an application for School Certification through the Student and Exchange Visitor Information (SEVIS) system, a SEVP-managed

Internet-based system to track and monitor schools and noncitizen students in the United States. *See* 8 C.F.R. § 214.3.

35.    "Each school that educates F-1 students has a Designated School Official ('DSO') who monitors, advises, and oversees the students attending his or her institution." *Jie Fang*, 935 F.3d at 175.

36.    International students are "subject to an array of regulations" governing their student status. *Id*. (citing 8 C.F.R. § 213.2(f)). "These include maintaining a full course of study" such as postgraduate study at a college certified by a DSO. *Id*. (citing 8 C.F.R. § 214.2(f)(6)). Students may participate in "two types of practical training programs." *Id*. (citing 8 C.F.R. § 214.2(f)(10)(ii)). "Curricular Practical Training ('CPT') is any 'alternative work/study, internship, cooperative education, or any other type to required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school' that is an 'integral part of an established curriculum.'" *Id*. (quoting 8 C.F.R. § 214.2(f)(1)(i)). As its name suggests, CPT is usually integrated into the course of study and is available to the student before program completion.

37.    "The other is Optional Practical Training ('OPT') which consists of temporary employment that is 'directly related to the student's major area of study.'" *Id*. (quoting 8 C.F.R. § 214.2(f)(1)(ii)). OPT usually occurs at the end of the completion of the studies. "Certain F-1 students who receive science, technology, engineering, and mathematics (STEM) degrees may apply for a 24-month extension of their post-completion" OPT. USCIS, *Optional Practical Training Extension for STEM Students (STEM OPT)*.[14]

---

[14]    https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/optional-practical-training-extension-for-stem-students-stem-opt.

38.     "Once a student has completed his or her course of study and any accompanying practical training, he or she has sixty days to either depart the United States or transfer to another accredited academic institution and seek a transfer of the F-1 visa." *Jie Fang*, 935 F.3d at 175 (citing 8 C.F.R. § 214.2(f)(5)(iv)).  "If a student voluntarily withdraws from the F-1 program, he or she has fifteen days to leave the United States." *Id*.  "A student who 'fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status' must depart the United States immediately or seek reinstatement." *Id*. (quoting 8 C.F.R. § 214.2(f)(5)(iv)).

39.     Under the regulation, DSOs at schools must report through SEVIS to SEVP when a student fails to maintain status.  *See* 8 C.F.R. § 214.3(g)(2).  SEVIS termination is governed by SEVP policy and regulations.  DHS has stated that termination of a student's SEVIS record means that the student "no longer ha[s] valid F-1 nonimmigrant status and must either file for reinstatement of [his] nonimmigrant student status with U.S. Citizenship and Immigration Services (USCIS) or depart the United States immediately." *Jie Fang*, 935 F.3d at 177 (quoting DHS's letter "to inform those students that their valid F-1 status had been terminated").  Indeed, according to DHS's website on the termination of SEVIS, "[w]hen an F-1/M-1 SEVIS record is terminated[,]" international students "lose[] all on-and/or off-campus employment authorization[,]" "cannot re-enter the United States on the terminated SEVIS record[,]" ICE "agents may investigate to confirm the departure of the student[,]" and "[a]ny associated F-2 or M-2 dependent records are terminated." Homeland Security, "TERMINATE A STUDENT," *the Department of Homeland Security* (Nov. 7, 2024).[15]  *See also* Homeland Security, "TERMINATE OR REACTIVATE A DEPENDENT

---

[15] https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student.

RECORD," *the Department of Homeland Security* (Mar. 17, 2023)[16] ("When a dependent is terminated in SEVIS, it means that dependent is no longer eligible for F-2 or M-2 status.").

40.     The regulations distinguish between two separate ways in which a student may fall out of status: (1) a student  who "fails to maintain status," which is ordinarily monitored and determined by a DSO; and (2) an agency-initiated "termination of status."

41.     Under the first way, F-1 student status can be terminated (and then subsequently reflected in the SEVIS system) if students fail to maintain their status.  Under 8 C.F.R. § 214.2(f)(5), an international student does not maintain status if the student fails to make "normal progress toward completing a course of study."   In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder—such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year—"constitute a failure to maintain status."

42.     Under the second way for agency-initiated termination of F-1 student status, DHS's ability to terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)."  *Jie Fang*, 935 F.3d at 185 n.100.   Under this regulation, DHS can terminate F-1 student status only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. *Id.*

43.     The revocation of an F-1 visa does *not* constitute a failure to maintain F-1 student status and, therefore, cannot serve as a basis for termination of F-1 student status.  If an F-1 visa is revoked before the student's arrival in the United States, the student may not enter, and his

---

[16]     https://studyinthestates.dhs.gov/sevis-help-hub/student-records/dependents/terminate-or-reactivate-a-dependent-record.

SEVIS record is terminated.  However, the SEVIS record may not be terminated as a result of visa revocation *after* a student has been admitted into the United States because *the student is permitted to continue the authorized course of study*.  *See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010).[17]

44.    DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."  *Id*.  Rather, if the visa is revoked, the student is permitted to pursue his course of study in school, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.  *See* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).[18]

45.    While a visa revocation can be charged as a ground of deportability in removal proceedings, deportability can be contested in such proceedings.  *See* 8 U.S.C. § 1227(a)(1)(B); 8 U.S.C. § 1201(i).  The Immigration Judge may also dismiss removal proceedings where a visa is revoked, so long as a student is able to remain in valid status or otherwise reinstated to F-1 student status.  *See* 8 C.F.R. § 1003.18(d)(ii)(B).

46.    The Immigration Judge has no ability to review the F-1 student status termination in the SEVIS system.  *See Jie Fang*, 935 F.3d at 183.

47.    Students who have failed to maintain F-1 status may seek reinstatement.  Under regulations, "a district director in the U.S. Citizenship and Immigration Services ('USCIS') 'may consider' reinstating a student who demonstrates that he or she: 1) 'has not been out of [valid F-1] status for more than 5 months at the time of filing the request for reinstatement' or that 'the failure to file within the 5 month period was the result of exceptional circumstances and that the student

---

[17] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.
[18] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

filed the request for reinstatement as promptly as possible under these exceptional circumstances;'
2) does 'not have a record of repeated or willful violations of Service regulations'; 3) is pursuing
or intends to pursue a full course of study; 4) has not engaged in unauthorized employment; 5) is
not deportable on any ground other than 8 U.S.C. § 1227(a)(1)(B) and (C)(i); and 6) can prove that
the violation of status resulted from circumstances beyond the student's control, or that the
violation relates to a reduction in the student's course load that would have otherwise been
permitted if authorized by the school and that failure to approve reinstatement would result in
extreme hardship to the student." *Jie Fang*, 935 F.3d at 176 (citing and quoting 8 C.F.R. §
214.2(f)(16)(i)(A)-(F)).

48.     However, based on information and belief, reinstatement may not be available for
Class Plaintiffs and proposed class members because they have not failed to maintain their student
status.  Moreover, based on information and belief, DSOs have not been able to successfully
request a correction of the F-1 student status in the SEVIS system.[19]

**Termination of Plaintiffs' F-1 Student Status**

**Manikanta Pasula**

49.     Manikanta Pasula is a 25-year-old F-1 student at Rivier University in New
Hampshire.

50.     Manikanta is a citizen and national of India.

51.     Manikanta came to the United States under an F-1 visa to study at the University
of Bridgeport in Connecticut on January 5, 2024.  Due to personal reasons, he transferred to Rivier
University on January 29, 2024.  He is majoring in computer science.

---

[19] https://studyinthestates.dhs.gov/sevis-help-hub/student-records/certificates-of-eligibility/reinstatement-coe-form-i-20.

52.     On March 25, 2024, Manikanta was arrested and charged without a valid U.S. license while he was driving with his Indian driver's license (but not an International Driving Permit).  However, New Hampshire permits the use of an International Driving Permit for up to 60 days after an international student's arrival in the United States, and Manikanta was driving within that 60-day window.  Not being familiar with the United States criminal justice system, he pled guilty and paid a $248 fine.  After this incident, he immediately obtained a valid U.S. driver's license.

53.     Manikanta is in the process of completing his third semester.  After this semester, he has one more semester before he can get his degree and also apply for OPT in the field of computer science.

54.     He has spent approximately $45,000 on his education in the United States.

55.     On April 4, 2025, Manikanta received an email from Rivier University that the State Department revoked his visa.  In the same email, the University indicated that his SEVIS record was terminated and that he was out of status due to the SEVIS termination.

56.     On April 10, 2025, Manikanta separately received an email from the U.S. Consulate General, Mumbai, that confirmed that his visa was revoked.  The email from the U.S. Consulate General indicated that "[r]emaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation."

57.     The termination is a significant concern to Manikanta, as his legal status in the United States is entirely dependent on the SEVIS record being active and in good standing.

58.     Further, the termination will affect his ability to successfully complete his academic program and pursue OPT, which is an essential part of his career development and future plans.

**<u>Likhith Babu Gorrela</u>**

59.     Likhith Babu Gorrela is a 23-year old F-1 student at Rivier University in New Hampshire.

60.     Likhith is a citizen and national of India.

61.     On August 19, 2023, Likhith came to the United States on an F-1 student visa.  He initially received a visa to attend the University of New Haven's Master's program in Supply Chain Management.  However, he transferred his studies to Rivier University to obtain a Master's degree in Computer and Information Systems.

62.     Likhith is in the final stage of his program, with only one course remaining and a few classes left to attend before he completes all degree requirements.

63.     On May 30, 2024, Likhith was charged without a valid U.S. license while he was driving with an International Driving Permit.  Thereafter, he immediately obtained a valid U.S. driver's license while the charge was pending.  This charge was then nolle prossed.

64.     On April 4, 2025, the school informed Likhith that his SEVIS record was terminated. However, he did not receive any notice or sufficient explanation as to why his SEVIS record was terminated.

65.     On April 8, 2025, Likhith received an email from the U.S. Embassy in India that his visa was revoked.

66.     The termination of his F-1 status makes Likhith unable to complete his course work and graduate without risking potential detention and deportation.  His graduation date is May 20, 2025.

67.     Prior to the termination of his student status, Likhith had submitted an application for OPT upon completion of his degree.  His eligibility for this OPT program is also in jeopardy.

68.     Likhith is also concerned about possible immigration detention and deportation.

**Thanuj Kumar Gummadavelli**

69.    Thanuj Kumar Gummadavelli is a 23-year old F-1 student at Rivier University in New Hampshire.

70.    Thanuj is a citizen and national of India.

71.    Thanuj entered the United States in December 2023 to begin his Master's program in computer science.

72.    In August 2024, Thanuj was charged with speeding and a traffic misdemeanor for failing to carry a valid U.S. driver's license.  He was instead carrying a valid international driving permit at the time, but he was outside the 60-day window in which this international driving permit was valid in New Hampshire.  Before his scheduled September 11, 2024 court date, he obtained his U.S. driver's license.  On September 11, 2024, he presented his U.S. license before a judge and the charge was nolle prossed.  He pled guilty to speeding at the court date and paid the required $124 fine.

73.    On April 9, 2025, Thanuj received an email from Rivier University that his F-1 student status was terminated.

74.    According to the email, the SEVIS record indicated the following: "_Failure to Maintain Status_: Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."  (emphasis added).  In other words, he was told that his student status was terminated.

75.    On April 11, 2025, Thanuj received an email from the U.S. Embassy in India that his visa was revoked.

76.    Thanuj has a fear of immigration detention and deportation as well as his future because of the termination of his F-1 student status.  The termination has put his education and

career trajectory at risk, including whether he will be able to finish his studies and obtain his degree. In light of the termination, his plan of graduating and completing his Master's program is in jeopardy. For his Master's degree, both his advisor and the department expect him to complete the coursework program by December 2025.

**Hangrui Zhang**

77.    Hangrui Zhang is a 23-year old F-1 student at Worcester Polytechnic Institute (WPI) in Massachusetts.

78.    Hangrui is a citizen and national of China.

79.    Hangrui entered the United States in August 2023 to begin his Ph.D. in Electronic and Computer Science at WPI. During these years, he has kept a GPA of 4.0 out of 4.0.

80.    In December 2024, stemming from a misunderstanding, Hangrui was arrested and charged with a misdemeanor. However, his case was dismissed through pretrial diversion.

81.    On April 9, 2025, Hangrui was informed that his SEVIS record was terminated. The SEVIS record indicated the following: "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."

82.    The termination of his F-1 student status has left Hangrui deeply worried about both immediate detention and his long-term future. Not knowing where he stands legally in the United States has caused significant emotional distress, especially after years of dedicated effort towards achieving his academic and career aspirations.

83.    Without F-1 student status, his ability to continue his studies, contribute to research, and pursue his professional goals is in jeopardy. He is terrified of being compelled to leave the United States before completing his Ph.D. program, which would interrupt everything he has worked for.

84.     Hangrui is no longer permitted to work as a research assistant.  Nor can he receive financial support from his doctoral program. This has created serious academic and financial hardship, as the assistantship was not only an essential part of his Ph.D. training, but also his sole source of income.

**<u>Haoyang An</u>**

85.     Haoyang An is a 25-year-old F-1 student at Worcester Polytechnic Institute (WPI) in Massachusetts.

86.     Haoyang is a citizen and national of China.

87.     Haoyang first came to the United States under an F-1 visa to study at the University of Connecticut on August 18, 2018.

88.     On August 24, 2022, Haoyang graduated with a Bachelor of Arts in Applied Mathematics.

89.     On September 5, 2022, Haoyang started to pursue his first Master's degree at Boston University.

90.     On May 19, 2024, he obtained a Master of Science in Applied Business Analytics.

91.     On August 22, 2024, Haoyang started his second Master's degree at WPI.

92.     Haoyang has one semester left to finish his degree. He was planning to apply for a PhD program at WPI next semester.

93.     Haoyang has thus far invested $329,196 for his education in the U.S.

94.     In September 2023, Haoyang was charged with a misdemeanor for driving without an active insurance policy in Massachusetts.  Later, this offense was dismissed.

95.     On April 9, 2025, a WPI International Student Officer notified Haoyang that his F-1 student status in the SEVIS record was terminated based on the following reason: "OTHER –

Individual identified in criminal records check and/or has had their VISA revoked.  SEVIS record has been terminated."

96.    On April 14, 2025, Haoyang received an email from the U.S. Embassy in Beijing, China was his visa was revoked.

97.    In light of the termination, Haoyang's plan to complete his Master's degree in Data Science and apply for a Ph.D. program in the United States is in jeopardy.

98.    Haoyang is also concerned about possible immigration detention and deportation.

## Class Action Allegations

99.    Plaintiffs bring this action on behalf of themselves and all others who are similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2).  A class action is proper because this action involves questions of law and fact common to the class; the class is so numerous that joinder of all members is impractical; Plaintiffs' claims are typical of the claims of the class; and Plaintiffs will fairly and adequately protect the interests of the class.  Defendants have acted on grounds that apply generally to the class, so that relief under the Administrative Procedure Act and declaratory relief are appropriate with respect to the class as a whole.

100.    Plaintiffs seek to represent the following two distinct classes:

Regulatory Class 1 (As to Count 1 -- Regulatory/APA claim): All current or future students at (and Optional Practical Training participants affiliated with) any educational institutions (including colleges and universities) in New Hampshire, Massachusetts, Maine, Rhode Island, and Puerto Rico who had their F-1 student status terminated and had their SEVIS immigration record correspondingly terminated by Defendants on or after March 1, 2025 where Defendants' student status termination was neither (i) based on the criteria set forth in 8 C.F.R. § 214.1(d), (ii) because the student failed to maintain student status based on the criteria set forth in 8 C.F.R. § 214.1(e)-(g), nor (iii) because the student failed to make normal progress toward completing a course of study under 8 C.F.R § 214.2(f)(5)(i).  This class excludes any current student or Optional Practical Training participant who otherwise satisfies this class definition but who has a pending lawsuit challenging the termination of student status or a SEVIS record.

Due Process Class (As to Count 2 -- Due Process Claim): All current or future students at

(and Optional Practical Training participants affiliated with) any educational institutions (including colleges and universities) in New Hampshire, Massachusetts, Maine, Rhode Island, and Puerto Rico who had their F-1 student status terminated and had their SEVIS immigration record correspondingly terminated by Defendants on or after March 1, 2025 where Defendants either: (i) did not directly notify these students/graduates of the reason for the termination of F-1 student status; (ii) did not specify the specific factual reason for the termination under the regulations governing student status termination (*see* 8 C.F.R. § 214.1(d)) or the regulations governing failure to maintain student status (*see* 8 C.F.R. § 214.1(e)-(g), 8 C.F.R § 214.2(f)); or (iii) did not provide the students/graduates with an opportunity to challenge the termination of student status. This class excludes any current student or Optional Practical Training participant who otherwise satisfies this class definition but who has a pending lawsuit challenging the termination of student status or a SEVIS record.

101.    The proposed class satisfies the requirements of numerosity, commonality, typicality, and adequacy in Rule 23(a) and is readily ascertainable.

102.    The proposed class already includes tens, if not hundreds, of students and OPT participants—and counting—whose F-1 student status (as reflected in the SEVIS system) has been unilaterally terminated by Defendants without compliance with the appropriate regulatory criteria and without due process, which is sufficient to satisfy numerosity.

103.    The class raises common legal questions that will generate common answers, including whether Defendants' termination of student status without meeting the criteria for the applicable regulation governing student status termination (*see* 8 C.F.R. § 214.1(d)) and the regulations governing failure to maintain student status (*see* 8 C.F.R. § 214.1(e)-(g), 8 C.F.R § 214.2(f)) violates the law. The class also raises common factual issues because proposed class representatives and class members are subject to the same practice where student status was terminated without due process and without meeting the appropriate regulatory criteria governing student status termination (*see* 8 C.F.R. § 214.1(d)) or governing failure to maintain student status (*see* 8 C.F.R. § 214.1(e)-(g), 8 C.F.R § 214.2(f)).

104.    Here, the interests of the proposed class representatives and the proposed class members are aligned.  The proposed class representatives are members of the class and have suffered the same injury as the proposed class members, namely that the Defendants have revoked student status without meeting the criteria of the applicable regulations and without complying with due process.

105.    Proposed class representatives are also adequately represented by a team of attorneys with significant experience in immigrants' rights issues and class action cases from the ACLU of New Hampshire.

106.    The proposed class also satisfies Federal Rules of Civil Procedure 23(b)(2). Defendants have acted on grounds generally applicable to the proposed class, thereby making final declaratory, APA, and injunctive relief appropriate with respect to the class as a whole.

## CLAIMS FOR RELIEF

### COUNT 1 – CLASS COUNT
### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT—ARBITRARY AND CAPRICIOUS AGENCY ACTION
### (Unlawful F-1 Student Status Termination)

107.    The foregoing allegations are realleged and incorporated herein.

108.    Defendants' termination of Plaintiffs' and class members' F-1 student status is a final agency action.  *See Jie Fang*, 935 F.3d at 182 ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decision making process, and is therefore a final order").

109.    Defendants' termination violates the Administrative Procedure Act (APA) and should be set aside pursuant to 5 U.S.C. § 706(2)(A) as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, including the regulatory regime at 8 C.F.R. § 214.1(d)-(g) and 8 C.F.R. § 214.2(f).

110.    Defendants have no statutory or regulatory authority to terminate Class Plaintiffs' and class members' student status.

111.    Under 8 C.F.R. § 214.2(f)(5), an international student does not maintain status if the student fails to make "normal progress toward completing a course of study."  In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder—such as engaging in "[a]ny unauthorized employment[,]" "willful failure to provide full and truthful information requested by DHS[,]" and "conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed"—constitute "a failure to maintain [student] status[.]"  However, none of these conditions under either 8 C.F.R. § 214.2(f)(5) or 8 C.F.R. § 214.1(e)-(g) have occurred for Class Plaintiffs and the class.

112.    Further, Defendants' ability to terminate an F-1 student status is limited by 8 C.F.R. § 214.1(d).  Under this regulation, Defendants can terminate student status _only_ when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.  But, for Class Plaintiffs and the class, none of these criteria has been satisfied, yet their student status was revoked anyway.

### COUNT 2 – CLASS COUNT
### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION
#### (Unlawful F-1 Student Status Termination)

113.    The foregoing allegations are realleged and incorporated herein.

114.    The United States Constitution requires notice and a meaningful opportunity to be heard.  _See Choeum v. I.N.S._, 129 F.3d 29, 38 (1st Cir. 1997) ("At the core of [a noncitizen's] . . .

due process rights is the right to notice and the nature of the charges and a meaningful opportunity to be heard.").

115.    Defendants terminated Plaintiffs' and class members' F-1 student status system without doing each of the following: (i) directly notifying these students/graduates of the reason for the termination of F-1 student status; (ii) specifying the specific factual reason for the termination under the regulations governing student status termination (*see* 8 C.F.R. § 214.1(d)) or the regulations governing failure to maintain student status (*see* 8 C.F.R. § 214.1(e)-(g), 8 C.F.R § 214.2(f)); and (iii) providing the students/graduates with an opportunity to challenge the termination of student status.

116.    Defendants' disregard for complying with the well-established due process principles violated Plaintiffs' and class members' due process rights.

## COUNT 3 -- ONLY ON BEHALF OF INDIVIDUAL PLAINTIFFS ONLY
### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION
#### (Unlawful Detention)

117.    The foregoing allegations are realleged and incorporated herein.

118.    The Fifth Amendment requires fair, pre-deprivation process when a person's liberty hangs in the balance.

119.    In light of the unlawful termination of Plaintiffs' F-1 student status, Plaintiffs are at risk of abrupt detention without prior notice.  *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (finding immigration detention must further twin goals of (1) ensuring noncitizen's appearance during removal proceedings and (2) preventing danger to the community).  There is no credible argument for Plaintiffs' immigration detention, preventing them from pursuing their studies.

## PRAYER FOR RELIEF

Plaintiffs ask that this Court grant the following relief:

(1).    Assume jurisdiction over this matter;

(2).    Certify the case as a class action as proposed herein and in the accompanying motion for class certification;

(3).    Declare that Defendants' termination of Plaintiffs' and class members' F-1 student status violated the APA (including under 8 C.F.R. § 214.1(d)) and Plaintiffs' Fifth Amendment due process rights and;

(4).    Issue a preliminary and permanent injunction requiring Defendants to reinstate the F-1 student status and corresponding SEVIS immigration record for all students at (and Optional Practical Training participants affiliated with) any educational institutions (including colleges and universities) in New Hampshire, Massachusetts, Maine, Rhode Island, and Puerto Rico who had their F-1 student status terminated and had their SEVIS immigration record correspondingly terminated by Defendants since March 1, 2025 where Defendants' student status termination was neither (i) based on the criteria set forth in 8 C.F.R. § 214.1(d), (ii) because the student failed to maintain student status based on the criteria set forth in 8 C.F.R. § 214.1(e)-(g), nor (iii) because the student failed to make normal progress toward completing a course of study under 8 C.F.R § 214.2(f)(5)(i);

(5).    Issue a preliminary and permanent injunction prohibiting Defendants from, in the future, terminating the F-1 student status and corresponding SEVIS immigration record for all students at (and Optional Practical Training participants affiliated with) any educational institutions (including colleges and universities) in New Hampshire, Massachusetts, Maine, Rhode Island, and Puerto Rico where (i) the criteria set forth in 8 C.F.R. § 214.1(d) is not satisfied, (ii) the student has not failed to maintain student status based on the criteria set forth in 8 C.F.R. § 214.1(e)-(g), and (iii) the student has not failed to make normal progress toward completing a course of study under 8 C.F.R § 214.2(f)(5)(i);

(6).    Issue a preliminary and permanent injunction prohibiting Defendants from terminating the F-1 student status and corresponding SEVIS immigration records for any student at (and Optional Practical Training participants affiliated with) any educational institutions (including colleges and universities) in New Hampshire, Massachusetts, Maine, Rhode Island, and Puerto Rico without doing all of the following: (i) directly notifying these students/graduates of the reason for the termination of F-1 student status; (ii) specifying the specific factual reason for the termination under the regulations governing student status termination (*see* 8 C.F.R. § 214.1(d)) or the regulations governing failure to maintain student status (*see* 8 C.F.R. § 214.1(e)-(g), 8 C.F.R § 214.2(f)); and (iii) providing the students/graduates with an opportunity to challenge the termination of student status;

(7).    Enjoin Defendants from detaining the individual Plaintiffs pending the instant case;

(8).    Award reasonable attorney's fees and costs; and

(9).    Order any further relief this Court deems just and proper.

Plaintiffs and similarly situated members,

By and through their Counsel,

Dated: April 18, 2025

Respectfully submitted,

/s/ SangYeob Kim

Ronald L. Abramson (NH Bar: 83593)
SHAHEEN & GORDON P.A.
180 Bridge Street
Manchester, NH 03104
603.792.8472
rabramson@shaheengordon.com

Carol Garvan (NH Bar: 21304)
Zachary L. Heiden*
Heather Zimmerman*
AMERICAN CIVIL LIBERTIES UNION OF MAINE FOUNDATION
P.O. Box 7860
Portland, Maine 04112
207.619.8687
cgarvan@aclumaine.org
heiden@aclumaine.org
hzimmerman@aclumaine.org

Lynette Labinger*
Cooperating counsel,
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF RHODE ISLAND
128 Dorrance Street, Box 710
Providence, RI 02903
401.465.9565
LL@labingerlaw.com

Gilles R. Bissonnette (NH Bar: 265393)
Henry Klementowicz (NH Bar: 21177)
SangYeob Kim (NH Bar: 266657)
Chelsea Eddy (NH Bar: 276248)
AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE FOUNDATION
18 Low Avenue
Concord, NH 03301
603.227.6678
gilles@aclu-nh.org
henry@aclu-nh.org
sangyeob@aclu-nh.org
chelsea@aclu-nh.org

Fermín L. Arraiza-Navas*
#215705 (US District Court Puerto Rico)
AMERICAN CIVIL LIBERTIES UNION PUERTO RICO CHAPTER
Union Plaza, Suite 1105
416 Avenida Ponce de León
San Juan, Puerto Rico 00918
787.753.9493
farraiza@aclu.org

Counsel for Plaintiffs
* Application for admission pro hac vice forthcoming

29