# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

**MANIKANTA PASULA, LIKHITH BABU GORRELA, THANUJ KUMAR GUMMADAVELLI, HANGRUI ZHANG**, and **HAOYANG AN**, on behalf of themselves and all those similarly situated,

      **Plaintiffs,**

    v.

**U.S. DEPARTMENT OF HOMELAND SECURITY;**

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT;**

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, BOSTON FIELD OFFICE;**

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MANCHESTER SUB-FIELD OFFICE;**

**KRISTI NOEM, Secretary of the Department of Homeland Security;**

**TODD LYONS, Acting Director of the Immigration and Customs Enforcement;**

      **Defendants.**

**No. 1:25-cv-156**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' EXPEDITED MOTION FOR A CLASSWIDE PRELIMINARY INJUNCTION

## INTRODUCTION

Pursuant to Count 1 of Plaintiffs' and class members' Complaint for Declaratory and Injunctive Relief, Plaintiffs request a preliminary injunction:

A. Requiring Defendants to reinstate the F-1 student status and corresponding SEVIS immigration record for all students at (and Optional Practical Training participants affiliated with) any educational institutions (including colleges and universities) in New Hampshire, Massachusetts, Maine, Rhode Island, and Puerto Rico who had their F-1 student status terminated and had their SEVIS immigration record correspondingly terminated by Defendants since March 1, 2025 where Defendants' student status termination was neither (i) based on the criteria set forth in 8 C.F.R. § 214.1(d), (ii) because the student failed to maintain student status based on the criteria set forth in 8 C.F.R. § 214.1(e)-(g), nor (iii) because the student failed to make normal progress toward completing a course of study under 8 C.F.R § 214.2(f)(5)(i);

B. Enjoining Defendants from, in the future, terminating the F-1 student status and corresponding SEVIS immigration record for all students at (and Optional Practical Training participants affiliated with) any educational institutions (including colleges and universities) in New Hampshire, Massachusetts, Maine, Rhode Island, and Puerto Rico where (i) the criteria set forth in 8 C.F.R. § 214.1(d) is not satisfied, (ii) the student has not failed to maintain student status based on the criteria set forth in 8 C.F.R. § 214.1(e)-(g), and (iii) the student has not failed to make normal progress toward completing a course of study under 8 C.F.R § 214.2(f)(5)(i).

Further, pursuant to the concurrently filed Motion for Class Certification and Appointment of Class Counsel, Plaintiffs request that the Court concurrently certify the proposed class to provide this vital relief.

Since at least March 1, 2025[1], Defendant United States Department of Homeland Security ("DHS") and their agents (collectively, "Defendants") began, for unknown and unspecified reasons, unilaterally terminating the F-1 student status of hundreds, if not thousands, of

---

[1] On March 27, Secretary of State Marco Rubio said the State Department had revoked 300 or more student visas *since approximately early March* claiming these students were "lunatics" not in the United States just to study, but to engage in activism. *See* Daniella Silva, Chloe Atkins, Julia Ainsley and Abigail Williams, "Trump takes aim at foreign-born college students, with 300 visas revoked," *NBC News* (Mar. 27, 2025), https://www.nbcnews.com/news/us-news/trump-administration-takes-aim-immigrant-students-rcna198346; Marc Caputo, "Exclusive: Trump's 'pro-Hamas' purge could block foreign students from colleges," Axios.com (Mar. 27, 2025), https://www.axios.com/2025/03/27/trump-palestinian-hamas-purge-colleges-protests ("More than 300 foreign students have had their student visas revoked in the three weeks 'Catch and Revoke' has been in operation, the official said. There are 1.5 million student visa-holders nationwide.").

1

international students and Optional Practical Training ("OPT") participants throughout the United States and then reflecting that termination in the SEVIS [Student and Exchange Visitor] system.[2]

Plaintiffs Manikanta Pasula, Likhith Babu Gorrela, Thanuj Kumar Gummadavelli, Hangrui Zhang, Haoyang An, and the proposed class members are the students affiliated with educational institutions in New Hampshire, Maine, Massachusetts, Rhode Island, and Puerto Rico affected by Defendants' unilateral and unlawful termination of F-1 student status. As of April 10, 2025, *NAFSA: Association of International Educators* estimated that more than 800 international students' and scholars' status in the SEVIS[3] system had been terminated nationwide.[4] This number has grown rapidly since then. *Inside Higher Ed* estimates that, as of April 17, 2025, over 240 colleges and universities have identified 1,480-plus international students and recent graduates who have had their legal status changed.[5] As of April 11, 2025, New Hampshire, Maine, Massachusetts, Rhode Island, and Puerto Rico collectively have at least 112 students whose F-1 student status has been terminated.[6]

It cannot be reasonably disputed that these students have lost their student status. For example, on April 9, 2025, Thanuj Kumar Gummadavelli was informed by his university that his

---

[2] Elizabeth Román, "5 Umass Amherst students have visas revoked," *NHPR* (Apr. 5, 2025), https://www.nhpr.org/2025-04-05/5-umass-amherst-students-have-visas-revoked; Katy Stegall and Esmeralda Perez, "Five USCD students' visas revoked and additional person deported, university confirms," *CBS8* (Apr. 5, 2025), https://www.cbs8.com/article/news/local/five-ucsd-students-f-1-visas-revoked-additional-deported/509-2e257e52-4a31-42f7-8e3e-f6bd92a287b3; Molly Farrar, "Feds quietly revoke visas of multiple Umass, Harvard students," *Boston.com* (Apr. 6, 2025), https://www.boston.com/news/local-news/2025/04/06/feds-quietly-revoke-visas-of-multiple-umass-harvard-students/.

[3] SEVIS is "the web-based system that [DHS] uses to maintain information regarding:" F-1 "students studying in the United States[.]" https://studyinthestates.dhs.gov/site/about-sevis.

[4] Erica L. Steward, "NAFSA Releases Initial Analysis of Visa Revocations and other Actions Targeting International Students and Scholars," *NAFSA* (Apr. 10, 2025), https://www.nafsa.org/reports-of-actions-targeting-international-students?fbclid=IwZXh0bgNhZW0CMTEAAR5GZENs_RyxYI5MAoN78Xe9b5PHOe21t7SWC5wOXzXCyZSJ3XGOdpLp1xR3Tw_aem_xblT2XvJBYzdE17DPvcKMg.

[5] Inside Higher Ed, "International Student Visas Revoked," https://www.insidehighered.com/news/global/international-students-us/2025/04/07/where-students-have-had-their-visas-revoked.

[6] Danny McDonald, et al., "Trump is revoking student visas. How many foreign students are there in New England?," *The Boston Globe* (Apr. 11, 2025), https://www.bostonglobe.com/2025/04/11/metro/student-visas-massachusetts-new-england/.

F-1 student status was terminated because his SEVIS record specifically indicated "*Failure to Maintain Status*: Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Exhibit J (emphasis added). In other words, Defendants were clear that his student status was terminated. Thanuj was not the only student whose SEVIS record was terminated on the grounds of students' failure to maintain status. Exhibit EE; Exhibit T ("For a listing of over fifteen students terminated in SEVIS between April 3rd and April 8th, the cause of termination was listed as 'otherwise failing to maintain status.'").

Confirming that the termination of a SEVIS record reflects lack of student status, DHS's own website on the termination of SEVIS states that, "[w]hen an F-1/M-1 SEVIS record is terminated[,]" international students "lose[] all on-and/or off-campus employment authorization[,]" "cannot re-enter the United States on the terminated SEVIS record[,]" ICE "agents may investigate to confirm the departure of the student[,]" and "[a]ny associated F-2 or M-2 dependent records are terminated." Homeland Security, "TERMINATE A STUDENT," *the Department of Homeland Security* (Nov. 7, 2024) (attached as Exhibit CC). *See also* Homeland Security, "TERMINATE OR REACTIVATE A DEPENDENT RECORD," *the Department of Homeland Security* (Mar. 17, 2023) ("When a dependent is terminated in SEVIS, it means that dependent is no longer eligible for F-2 or M-2 status.") (attached as Exhibit DD). After all, if terminating a SEVIS record has no impact on student status, what would be the point of terminating the SEVIS record? Of course, the termination of the SEVIS record must mean something. And, as in Thanuj's case and others, this SEVIS termination meant termination of student status, especially where the students implicated have previously maintained their course of study without issue. Schools too, consistent with DHS's own website, understand that the termination of a SEVIS record amounts to a termination of student status, which causes the student to lose their

educational opportunities.  And it is this loss of opportunity which may even—circularly—have the effect of DHS later claiming that the students have failed to make "normal progress toward completing a course of study."  8 C.F.R. § 214.2(f)(5).  On April 4, 2025, Manikanta Pasula received an email from Rivier University making clear that his SEVIS record was terminated and, thus, he was "out of status" due to the SEVIS termination.  <u>Exhibit B</u>.

The consequences of Defendants' unilateral and unlawful termination are dire.  The termination puts students out of lawful immigration status.  Plaintiffs and the class face immigration detention and deportation.[7]  Plaintiffs and the class face severe financial and academic hardship.  Further, Plaintiffs and the class are not able to obtain their degrees and work pursuant to the Optional Practical Training (OPT) program after graduation.  Indeed, Defendants' unilateral and unlawful terminations have severely disrupted the educational opportunities of students who are in the middle of their studies (and in the middle of a semester) and who are simply trying to obtain, often at considerable expense, an education in the United States while following all the rules required of them.

These injuries are real.  Plaintiff Linkhith Babu Gorrela's graduation date for his Master's program is May 20, 2025.  Without a valid F-1 student status, he may not obtain his Master's degree.  Nor can he participate in the OPT program after graduation.  Plaintiff Hangrui Zhang's only source of income is his research assistantship, which has been cut off in light of the termination of his F-1 student status.  Plaintiff Haoyang An will have to abandon his Master's program despite having already invested $329,196 in his education in the United States.  Similarly,

---

[7] *See* Samantha Davis, "Marshall resident detained by ICE on student visa," *Marshall Independent* (Apr. 14, 2025), ("Aditya Wahyu Harsono, a 33-year-old resident of Marshall and Indonesian citizen, was arrested by U.S. Immigration and Customs Enforcement (ICE) agents on March 27. He was in the United States on an active F-1 student visa, which was revoked without warning four days prior to his detainment."), https://www.marshallindependent.com/news/local-news/2025/04/marshall-resident-detained-by-ice-on-student-visa/.

Plaintiff Thanuj Kumar Gummadavelli and Plaintiff Manikanta Pasula have only one semester left before they can complete their Master's degrees and participate in the OPT program. Their graduation is unpredictable and unlikely unless this Court intervenes.

Plaintiffs' Motion for Preliminary Injunction is straightforward. This lawsuit only challenges Defendants' revocation of student status. While Defendants' reasons for these mass terminations of student status are unclear, what is clear is that these terminations—across the board—flout the applicable regulations governing student status termination (*see* 8 C.F.R. § 214.1(d)) and the regulations governing failure to maintain student status (*see* 8 C.F.R. § 214.1(e)-(g), 8 C.F.R § 214.2(f)). Indeed, for the entire class, the applicable regulatory criteria has never been satisfied justifying these terminations.

The regulations distinguish between two separate ways in which a student may fall out of status: (1) a student who "fails to maintain status," which is ordinarily monitored and determined by a DSO; and (2) an agency-initiated "termination of status."

Under the first way, F-1 student status can be terminated (and then subsequently reflected in the SEVIS system) if students fail to maintain their status. Under 8 C.F.R. § 214.2(f)(5), an international student does not maintain status if the student fails to make "normal progress toward completing a course of study." In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder—such as engaging in "[a]ny unauthorized employment[,]" "willful failure to provide full and truthful information requested by DHS[,]" and "conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed"—constitute "a failure to maintain [student] status[.]" However, none of these conditions under either 8 C.F.R. § 214.2(f)(5) or 8 C.F.R. § 214.1(e)-(g) occurred for the Class Plaintiffs and class who have had their student status

unilaterally revoked. These class members have made "normal progress toward completing a course of study" under 8 C.F.R. § 214.2(f)(5). And the conditions of 8 C.F.R. § 214.1(e)-(g) have not been met. These students have not been convicted of any crimes of violence. They have not engaged in any unauthorized employment. And they have not provided any false information to DHS.

Under the second way for agency-initiated termination of F-1 student status, DHS's ability to terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang v. Director United States Immigration & Customs Enforcement*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019). Under this regulation, Defendants can terminate student status *only* when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. But, for Class Plaintiffs and the entire class, none of these criteria has been satisfied, yet their student status has been revoked anyway.

This unilateral termination by DHS without consulting with DSOs at each school also is unprecedented. It has been the historical practice of DHS to consult with DSOs to terminate foreign students' F-1 student status in the Student and Exchange Visitor Program (SEVIS) record. Exhibit S at 4-5 ("I know of no situation where ICE terminated the SEVIS record. In fact, even if ICE or SEVP are aware of a violation, their practice is to notify the DSO of the violation and ask the DSO to investigate the matter and terminate the SEVIS record, if termination is warranted.").

To be clear, Plaintiffs and proposed class members do *not* challenge the revocation of any F-1 *visa*, even assuming that their visas were actually revoked. Instead, Plaintiffs and class members bring this lawsuit to challenge DHS's unlawful termination of their F-1 student

status.  Indeed, the revocation of an F-1 visa does _not_ constitute a failure to maintain F-1 student status and, therefore, cannot serve as a basis for termination of F-1 student status.  Once again, for the agency-initiated termination of F-1 student status, DHS's ability to terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100.  Under this regulation, the revocation of an F-1 visa does not provide a basis to terminate F-1 student status.  DHS's own policy guidance confirms that "[v]isa revocation is _not_, in itself, a cause for termination of the student's SEVIS record."  ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010) (emphasis added) (attached as Exhibit V).  Rather, if the visa is revoked, *the student is permitted to pursue his course of study in school*, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.  *See* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016) (attached as Exhibit W).  If DHS seeks to terminate F-1 student status (and then reflect said termination in the SEVIS system) after—or independent of—revocation of an F-1 visa, DHS must comply with 8 C.F.R. § 214.1(d).  *See Jie Fang*, 935 F.3d at 185 n.100.  DHS has not done so here.

Because Defendants unlawfully terminated Plaintiffs' and class members' F-1 student status in an arbitrary and capricious manner and the existence of imminent harm is real, Plaintiffs request that the Court issue the requested preliminary injunction.

### FACTUAL BACKGROUND
### Background on F-1 Student Visa and Status

Under the statute, noncitizens can enroll in government-approved academic institutions as F-1 students.  *See* 8 U.S.C. § 1101(a)(15)(F).  Students enter the United States on an F-1 visa issued by the U.S. Department of State.  Once they enter the United States with an F-1 visa, students are granted F-1 student status and permitted to remain in the United States for the duration

of status (D/S) as long as the student continues to meet the requirements established by the regulations governing the student's visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. DHS's Student and Exchange Visitor Program (SEVP) is in charge of administering the F-1 student program and tracking information on students in F-1 student status.

An academic institution must obtain formal approval from DHS before it can sponsor a student's F-1 status. An institution must first file an application for School Certification through the Student and Exchange Visitor Information (SEVIS) system, a SEVP-managed Internet-based system to track and monitor schools and noncitizen students in the United States. *See* 8 C.F.R. § 214.3. "Each school that educates F-1 students has a Designated School Official ('DSO') who monitors, advises, and oversees the students attending his or her institution." *Jie Fang*, 935 F.3d at 175.

For international students, they are "subject to an array of regulations." *Id.* (citing 8 C.F.R. § 214.2(f)). "These include maintaining a full course of study[.]" *Id.* (citing 8 C.F.R. § 214.2(f)(6)). Students may also participate in "two types of practical training programs." *Id.* (citing 8 C.F.R. § 214.2(f)(10)(ii)). "Curricular Practical Training ('CPT') is any 'alternative work/study, internship, cooperative education, or any other type to required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school' that is an 'integral part of an established curriculum.'" *Id.* (quoting 8 C.F.R. § 214.2(f)(1)(i)). As its name suggests, CPT is usually integrated into occurs during the course of study and is available to the student before its program completion.

"The other is Optional Practical Training ('OPT') which consists of temporary employment that is 'directly related to the student's major area of study.'" *Id.* (quoting 8 C.F.R. §

214.2(f)(1)(ii).  OPT usually occurs at the end of the completion of the studies.  In addition, "[c]ertain F-1 students who receive science, technology, engineering, and mathematics (STEM) degrees may apply for a 24-month extension of their post-completion" OPT.  USCIS, *Optional Practical Training Extension for STEM Students (STEM OPT)*[8] (attached as <u>Exhibit II</u>).

"Once a student has completed his or her course of study and any accompanying practical training, he or she has sixty days to either depart the United States or transfer to another accredited academic institution and seek a transfer of the F-1 visa." *Jie Fang*, 935 F.3d at 175 (citing 8 C.F.R. § 214.2(f)(5)(iv)).  "If a student voluntarily withdraws from the F-1 program, he or she has fifteen days to leave the United States." *Id*.  "A student who 'fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status' must depart the United States immediately or seek reinstatement." *Id*. (quoting 8 C.F.R. § 214.2(f)(5)(iv)).

Under the regulation, DSOs at schools must report through SEVIS to SEVP when a student fails to maintain status.  *See* 8 C.F.R. § 214.3(g)(2).  SEVIS termination is governed by SEVP policy and regulations.  DHS has shared its view that the termination of a student's SEVIS record means that the student "no longer ha[s] valid F-1 nonimmigrant status and must either file for reinstatement of [his] nonimmigrant student status with U.S. Citizenship and Immigration Services (USCIS) or depart the United States immediately." *Jie Fang*, 935 F.3d at 177 (quoting DHS's letter "to inform those students that their valid F-1 status had been terminated").  Indeed, according to DHS's website on the termination of SEVIS, "[w]hen an F-1/M-1 SEVIS record is terminated[,]" international students "lose[] all on-and/or off-campus employment authorization[,]" "cannot re-enter the United States on the terminated SEVIS record[,]" ICE "agents may investigate to confirm the departure of the student[,]" and "[a]ny associated F-2 or

---

[8]    https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/optional-practical-training-extension-for-stem-students-stem-opt.

M-2 dependent records are terminated." Homeland Security, "TERMINATE A STUDENT," *the Department of Homeland Security* (Nov. 7, 2024)[9] (attached as <u>Exhibit CC</u>). *See also* Homeland Security, "TERMINATE OR REACTIVATE A DEPENDENT RECORD," *the Department of Homeland Security* (Mar. 17, 2023)[10] (attached as <u>Exhibit DD</u>) ("When a dependent is terminated in SEVIS, it means that dependent is no longer eligible for F-2 or M-2 status.").

Again, the regulations distinguish between two separate ways in which a student may fall out of status: (1) a student who "fails to maintain status," which is ordinarily monitored and determined by a DSO; and (2) an agency-initiated "termination of status."

For the failure to maintain F-1 student status basis for termination, F-1 student status can be terminated (and then subsequently reflected in the SEVIS system) if students fail to maintain their status. Under 8 C.F.R. § 214.2(f)(5), an international student does not maintain status if the student fails to make "normal progress toward completing a course of study." In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitute a failure to maintain status."

Separately, for the agency-initiated termination of F-1 student status, DHS's ability to terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100. Under this regulation, DHS can terminate F-1 student status only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful

---

[9] https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student.
[10] https://studyinthestates.dhs.gov/sevis-help-hub/student-records/dependents/terminate-or-reactivate-a-dependent-record.

permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.  *Id.*

The revocation of an F-1 visa does <u>*not*</u> constitute a failure to maintain F-1 student status and, therefore, cannot serve as a basis for termination of F-1 student status.  If an F-1 visa is revoked before the student's arrival in the United States, the student may not enter, and his SEVIS record is terminated.  However, the SEVIS record may not be terminated as a result of visa revocation <u>after </u>a student has been admitted into the United States because <u>*the student is permitted*</u> <u>*to continue the authorized course of study*</u>.  *See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010)[11] (attached as <u>Exhibit V</u>).

DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."  *Id.*  Rather, if the visa is revoked, the student is permitted to pursue his course of study in school, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.  *See* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016)[12] (attached as <u>Exhibit W</u>).

While a visa revocation can be charged as a ground of deportability in removal proceedings, deportability can be contested in such proceedings.  *See* 8 U.S.C. § 1227(a)(1)(B); 8 U.S.C. § 1201(i).  The Immigration Judge may also even dismiss removal proceedings where a visa is revoked, so long as a student is able to remain in valid status or otherwise reinstated to F-1 student status.  *See* 8 C.F.R. § 1003.18(d)(ii)(B).  *See also* Aff. of Attorney Stephanie Elona Young Marzouk (attached as <u>Exhibit U</u>).  Status would be lost only when a final removal order is entered.

---

[11] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.
[12] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

The Immigration Judge has no ability to review the F-1 student status termination in the SEVIS system because the process is collateral to removal proceedings. *See Jie Fang*, 935 F.3d at 183.

Students whose F-1 student status has been terminated may seek reinstatement. Under regulations, "a district director in the U.S. Citizenship and Immigration Services ('USCIS') 'may consider' reinstating a student who demonstrates that he or she: 1) 'has not been out of [valid F-1 student] status for more than 5 months at the time of filing the request for reinstatement' or that 'the failure to file within the 5 month period was the result of exceptional circumstances and that the student filed the request for reinstatement as promptly as possible under these exceptional circumstances;' 2) does 'not have a record of repeated or willful violations of Service regulations'; 3) is pursuing or intends to pursue a full course of study; 4) has not engaged in unauthorized employment; 5) is not deportable on any ground other than 8 U.S.C. § 1227(a)(1)(B) and (C)(i); and 6) can prove that the violation of status resulted from circumstances beyond the student's control, or that the violation relates to a reduction in the student's course load that would have otherwise been permitted if authorized by the school and that failure to approve reinstatement would result in extreme hardship to the student." *Jie Fang*, 935 F.3d at 176 (citing and quoting 8 C.F.R. § 214.2(f)(16)(i)(A)-(F)).

### Termination of Plaintiffs' F-1 Student Status

#### Manikanta Pasula

Manikanta Pasula is a 25-year-old F-1 student at Rivier University in New Hampshire. Manikanta is a citizen and national of India. Manikanta came to the United States under an F-1 visa to study at the University of Bridgeport in Connecticut on January 5, 2024. Due to personal

reasons, he transferred to Rivier University on January 29, 2024. He is majoring in computer science.

On March 25, 2024, Manikanta was arrested and charged without a valid U.S. license while he was driving with his Indian driver's license (but not an International Driving Permit). However, New Hampshire permits the use of an International Driving Permit for up to 60 days after an international student's arrival in the United States, and Manikanta was driving within that 60-day window. Not being familiar with the United States criminal justice system, he pled guilty and paid a $248 fine. After this incident, he immediately obtained a valid U.S. driver's license.

Manikanta is in the process of completing his third semester. After this semester, he has one more semester before he can get his degree and also apply for OPT in the field of computer science. He has spent approximately $45,000 on his education in the United States.

On April 4, 2025, Manikanta received an email from Rivier University that the State Department revoked his visa. In the same email, the University indicated that his SEVIS record was terminated and that he was out of status due to the SEVIS termination. Exhibit B.

On April 10, 2025, Manikanta separately received an email from the U.S. Consulate General, Mumbai, that confirmed that his visa was revoked. Exhibit C. The email from the U.S. Consulate General indicated that "[r]emaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation." *Id*.

The termination is a significant concern to Manikanta, as his legal status in the United States is entirely dependent on the SEVIS record being active and in good standing. Further, the termination will affect his ability to successfully complete his academic program and pursue OPT, which is an essential part of his career development and future plans.

**Likhith Babu Gorrela**

13

Likhith Babu Gorrela is a 23-year old F-1 student at Rivier University in New Hampshire. Likhith is a citizen and national of India. On August 19, 2023, Likhith came to the United States on an F-1 student visa. He initially received a visa to attend the University of New Haven's Master's program in Supply Chain Management. However, he transferred his studies to Rivier University to obtain a Master's degree in Computers and Information Systems. Likhith has maintained a GPA of 3.6 through consistent dedication and academic integrity. He is in the final stage of his program, with only one course remaining and a few classes left to attend before he completes all degree requirements.

On May 30, 2024, Likhith was charged without a valid U.S. license while he was driving with an International Driving Permit. Thereafter, he immediately obtained a valid U.S. driver's license while the charge was pending. This charge was then nolle prossed.

On April 4, 2025, the school informed Likhith about the termination of his SEVIS record. However, he did not receive any notice or explanation as to why his criminal issue (driving without a valid license) was sufficient to terminate his student status. On April 8, 2025, Likhith received an email from the U.S. Embassy in India that his visa was revoked.

In light of this termination of his F-1 student status, he may not be able to graduate. His graduation date is May 20, 2025. His eligibility for this OPT program is also in jeopardy. Likhith is also concerned about possible immigration detention and deportation.

**Thanuj Kumar Gummadavelli**

Thanuj Kumar Gummadavelli is a 23-year old F-1 student at Rivier University in New Hampshire. Thanuj is a citizen and national of India. Thanuj entered the United States in December 2023 to begin his Master's program in computer science.

14

In August 2024, Thanuj was charged with speeding and a traffic misdemeanor for failing to carry a valid U.S. driver's license. He was instead carrying a valid international driving permit at the time, but he was outside the 60-day window in which this international driving permit was valid in New Hampshire. Before his scheduled September 11, 2024 court date, he obtained his U.S. driver's license. On September 11, 2024, he presented his U.S. license before a judge and the charge was nolle prossed. He pled guilty to speeding at the court date and paid the required $124 fine.

On April 9, 2025, Thanuj received an email from Rivier University that his F-1 student status was terminated because his SEVIS record specifically indicated "*Failure to Maintain Status*: Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Exhibit J. (emphasis added). In other words, Defendants were clear that his student status was terminated. On April 11, 2025, Thanuj received an email from the U.S. Embassy in India that his visa was revoked.

Thanuj has a fear for his safety and future because of the termination of his F-1 student status. The termination has put his education and career trajectory at risk, including whether he could finish his studies and obtain his degree. In light of the termination, his plan of graduating and completing his Master's program is in jeopardy. For his Master's degree, both his advisor and the department expect him to complete the coursework program by December 2025.

**Hangrui Zhang**

Hangrui Zhang is a 23-year old F-1 student at Worcester Polytechnic Institute (WPI) in Massachusetts. Hangrui is a citizen and national of China. Hangrui entered the United States in August 2023 to begin his Ph.D. in Electronic and Computer Science at WPI. During these years, he has kept a GPA of 4.0 out of 4.0.

In December 2024, stemming from a misunderstanding, Hangrui was arrested and charged with a misdemeanor.  However, his case was dismissed through the pretrial diversion.

On April 9, 2025, Hangrui was informed that his SEVIS record was terminated. The SEVIS record indicated the following: "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."  Exhibit N.  The termination of his F-1 visa status has left him deeply worried about both his personal safety and long-term future. Not knowing where he stands legally in the United States has caused significant emotional distress, especially after years of dedicated effort toward his academic and career aspirations.

Without F-1 student status, his ability to continue his studies, contribute to research, and pursue his professional goals is in jeopardy. He is terrified of being compelled to leave the United States before completing his Ph.D., which would interrupt everything he has worked for.  Hangrui is no longer permitted to work as a research assistant, nor can he receive financial support from his doctoral program. This has created serious academic and financial hardship, as the assistantship was not only his sole income source but also an essential part of his Ph.D. training.

As a second-year doctoral student, Hangrui is expected to prepare a publication under his advisor's supervision. However, because he is now unable to conduct research, this could significantly slow his academic progress and delay major milestones, including his Ph.D. qualification.  Hangrui has already fulfilled most of the coursework requirements.  At this stage of his doctoral studies, research has become his primary focus.  As a Ph.D. candidate, his department has a Diagnostic Examination Requirement which says: The doctoral student is required to complete the diagnostic examination requirement during the first year beyond the M.S. degree (or equivalent number of credits, for students admitted directly to the Ph.D. program) with a grade of

Pass. As a student who was admitted directly into the Ph.D. program, he is currently completing the M.S. degree requirements and is scheduled to take the associated examination next year.

However, since the termination of his SEVIS record, his funding has been cut off, forcing him to halt his research activities with his advisor. This disruption has had a serious impact on the progress of his work, and his Research Advisor and Committee will assess his performance within the context of these challenges. If he fails this examination, he will be removed from the graduate program, effectively ending his pursuit of a Ph.D.

**Haoyang An**

Haoyang An is a 25-year-old F-1 student at Worcester Polytechnic Institute (WPI) in Massachusetts. Haoyang is a citizen and national of China. Haoyang first came to the United States under an F-1 visa to study at the University of Connecticut on August 18, 2018. On August 24, 2022, Haoyang graduated with the Bachelor of Arts in Applied Mathematics. On September 5, 2022, Haoyang started to pursue his first Master's degree at Boston University. On May 19, 2024, he obtained a Master of Science degree in Applied Business Analytics. On August 22, 2024, Haoyang started his second Master's degree at WPI. Haoyang has one more semester left to finish his degree. He was planning to apply for a PhD program at WPI next semester. For his undergraduate and master programs, Haoyang has invested $329,196 so far for his United States education.

In September 2023, Haoyang had a misdemeanor charge for driving without an active insurance policy in Massachusetts. Later, this offense was dismissed.

On April 9, 2025, WPI International Student Officer notified that Haoyang that his F-1 student status in the SEVIS record was terminated based on the following reason: "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record

has been terminated." Exhibit Q. Haoyang did not receive any email from the U.S. Embassy on his visa revocation. In light of the termination, Haoyang's plan to complete his Master's degree in Data Science and his plan to apply for a Ph.D. program in the United States is in jeopardy. Haoyang is also concerned about possible immigration detention and deportation.

### Relevant Cases and Orders

Since the Defendants' unilateral and unlawful termination of international students' F-1 students, several individual courts, including this Court, have issued Temporary Restraining Orders to enjoin Defendants' termination of F-1 student status and require Defendants to set aside their termination determinations. *See, e.g., Liu v. Noem*, 1:25-cv-133-SM-TSM (D.N.H.), ECF 13; *Doe v. Noem*, 1:25-cv-10904-PBS (D. Mass.), ECF 11; *Wu v. Lyons*, 1:25-cv-1979 (E.D.N.Y.), ECF 9 (attached as Exhibit JJ); *Isserdasani v. Noem*, 3:25-cv-283-wmc, ECF 7 (attached as Exhibit KK); *Roe v. Noem*, 2:25-cv-40-DLC (D. Mont.), ECF 11 (attached as Exhibit LL).

### STANDARD OF REVIEW

To obtain a preliminary injunction, the movant must show "(1) the probability of the movant's success on the merits of their claim(s); (2) the prospect of irreparable harm absent the injunction; (3) the balance of the relevant equities (focusing upon the hardship to the movant if an injunction does not issue as contrasted with the hardship to the nonmovant if it does); and (4) the effect of the court's action on the public interest." *New Hampshire Indonesian Community Support v. Trump*, No. 25-cv-38-JL-TSM, 2025 U.S. Dist. LEXIS 24055, at *5-6 (D.N.H. Feb. 11, 2025) (quoting *Santiago v. Mun. of Utuado*, 114 F.4th 25, 34-35 (1st Cir. 2024)).

"The movant's likelihood of success on the merits weighs most heavily in the preliminary injunction calculus." *Id*. (quoting *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020)). "The third and fourth factors 'merge when the [g]overnment is the opposing party.'" *Id*. (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

All of these factors are satisfied here.

## ARGUMENT

### 1.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM

Defendants' termination of Plaintiffs' and class members' F-1 student status was unlawful. It violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, including the regulatory regime at 8 C.F.R. § 214.1(d).

Defendants' termination of Plaintiff's F-1 student status violates the Administrative Procedure Act ("APA"). As a preliminary matter, Defendants' termination of Plaintiffs' and class members' F-1 student status is a final agency action for which this Court has jurisdiction to review. *See Jie Fang*, 935 F.3d at 182 ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order"). Indeed—and critically—DHS has shared its view that the termination of a student's SEVIS record means that the student "no longer ha[s] valid F-1 nonimmigrant status and must either file for reinstatement of [his] nonimmigrant student status with U.S. Citizenship and Immigration Services (USCIS) or depart the United States immediately." *Jie Fang*, 935 F.3d at 177 (quoting DHS's letter "to inform those students that their valid F-1 status had been terminated"). In other words, the termination of a SEVIS record means that student status has been terminated. Confirming this interpretation, DHS's own website on the termination of SEVIS states that, "[w]hen an F-1/M-1 SEVIS record is terminated[,]" international students "lose[] all on-and/or off-campus employment authorization[,]" "cannot re-enter the United States on the terminated SEVIS record[,]" ICE "agents may investigate to confirm the departure of the student[,]" and "[a]ny associated F-2 or M-2 dependent records are terminated." Homeland Security, "TERMINATE A

STUDENT," *the Department of Homeland Security* (Nov. 7, 2024) (attached as <u>Exhibit CC</u>). *See also* Homeland Security, "TERMINATE OR REACTIVATE A DEPENDENT RECORD," *the Department of Homeland Security* (Mar. 17, 2023) ("When a dependent is terminated in SEVIS, it means that dependent is no longer eligible for F-2 or M-2 status.") (attached as <u>Exhibit DD</u>). Thus, this Court has jurisdiction over Defendants' termination of F-1 student status. Indeed, Defendants initially terminated Plaintiffs and class members on the ground that they failed to maintain their status. <u>Exhibit J</u>; <u>Exhibit T</u>; <u>Exhibit EE</u>. The failure to maintain status basis renders international students out of F-1 student status.

On the merits, Defendants had no statutory or regulatory authority to terminate Plaintiff's F-1 student status based simply on revocation of a visa or a criminal record check. This is for two straightforward reasons.

*First*, DHS's ability "to terminate an F-1 [student status] is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100. Under this regulation, DHS can terminate student status *only* when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. This criterion has not been met here for Class Plaintiffs and the class. Neither an arrest nor the revocation of a visa constitute a failure to maintain status and cannot, therefore, serve as a basis for termination of F-1 student status.

Indeed, if a visa is revoked before the student's arrival in the United States, the student may not enter, and his SEVIS record of F-1 student status is terminated. However, the SEVIS record of F-1 student status may not be terminated as a result of visa revocation after a student has been admitted into the United States because ***the student is permitted to continue the authorized***

*course of study*.  *See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010).[13] (attached as Exhibit V).  DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."  *Id.*  Rather, if the visa is revoked, the student *is permitted to pursue his course of study in school*, but upon departure, the SEVIS record of F-1 student status is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.  *See* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).[14] (attached as Exhibit W).  *See also* Exhibit S at 5 ¶15 ("The statement from ICE clearly states that even after visa revocation an F-1 student maintains status, and the agency will contact the DSO to confirm the student is maintaining visa status.").

*Second*, under the applicable regulation, Plaintiffs and class members have maintained their F-1 student status.  The revocation of a visa or the conviction of a non-violent charge do not cause students to fall out of student status.  Students fail to maintain their status when they do not comply with the regulatory requirement, such as failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their requirements under 8 C.F.R. § 214.2(f).  In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitute a failure to maintain status."  However, none of these violations occurred in Plaintiffs' and class members' cases.  Thus, they maintained their student status even if F-1 visas were revoked or if the student was convicted of a non-violent charge.  Here, Class Plaintiffs and the class have not been convicted of any crimes that would lead to loss of status.  They have

---

[13] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.
[14] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

not engaged in any unauthorized employment.  Nor have they provided any false information to DHS.

Because Defendants unlawfully terminated Plaintiffs' F-1 student status without any statutory or regulatory authority, Defendants' termination should be set aside pursuant to 5 U.S.C. § 706(2)(A) as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, including 8 C.F.R. § 214.1(d).

## 2.    PLAINTIFFS HAVE SUFFERED AND WILL CONTINUE TO SUFFER IRREPARABLE HARM ABSENT PRELIMINARY INJUNCTION

Class Plaintiffs and class members will suffer irreparable injury if Defendants' student status termination determination is not set aside and enjoined.

*First*, Class Plaintiffs and class members cannot make normal progress in their studies.  *See Liu*, 1:25-cv-133-SE-TSM, ECF 13 at 4 ("This loss of timely academic progress alone is sufficient to establish irreparable harm."); Aff. of Hangrui Zhang at 3 ¶14 ("Being unable to carry on with my research as a result of my SEVIS record termination would interfere with my academic schedule and potentially postpone my degree completion.") (attached as Exhibit M); Aff. of Likhith Babu Gorrela at 3 ¶¶11-12 ("I was nearing the completion of my degree, with only one subject remaining to graduate . . . [but] [w]ith this termination, I cannot finish my studies and obtain the Master's degree" and "will not [be] allow[ed] [] to apply for the Optional Practical Training (OPT) to gain practical experience even if I can graduate from the school.") (attached as Exhibit E); Aff. of Thanuj Kumar Gummadavelli at 2 ¶13 ("The termination puts my education and career trajectory at risk, and I fear not being able to complete and obtain my Master's degree.") (attached as Exhibit I); Aff. of Haoyang An at 3 ¶¶15-16 ("In this situation, I might not be able to attend the GQP course in person since my F-1 student status in SEVIS is being terminated. This termination further jeopardizes my PhD program application in the future because of the possible

out of student status" and "in light of the termination, I will not be able to participate in the Optional Practical Training (OPT).") (attached as Exhibit P).

_Second_, "the change in [Plaintiff's and class members'] [student] status in the SEVIS system may expose [them] to a risk of detention or deportation." _Liu_, 1:25-cv-133-SE-TSM, ECF 13 at 4. "Deportation is a drastic measure, often amounting to lifelong banishment or exile." _Hernandez-Lara v. Lyons_, 10 F.4th 19, 29 (1st Cir. 2021) (internal quotations omitted); _see also id_. at 28 ("[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception") (quoting _United States v. Salerno_, 481 U.S. 739, 755 (1987)). _See_ Aff. of Hangrui Zhang at 2 ¶10 ("The cancellation of my SEVIS record has left me fearful of possible immigration detention and removal from the country, as I may no longer hold valid student status. I am especially concerned about being abruptly detained and transferred to distant locations such as Louisiana.") (attached as Exhibit M); Aff. of Likhith Babu Gorrela at 3 ¶12 ("the fear that I will be arrested and sent to other parts of the country") (attached as Exhibit E); Aff. of Thanuj Kumar Gummadavelli at 2 ¶13 ("I further fear that I would be detained in other parts of the country such as Louisiana after being abruptly detained.") (attached as Exhibit I); Aff. of Haoyang An at 3 ¶17 ("I also worry about the possible immigration detention and deportation. Without having any valid student status, I fear that I could be detained and lose my ability to finish my degree and not pursue my future academic path.") (attached as Exhibit P). Indeed, Defendants have arrested international students after revoking their visas.[15]

---

[15] _See_ Samantha Davis, "Marshall resident detained by ICE on student visa," _Marshall Independent_ (Apr. 14, 2025), ("Aditya Wahyu Harsono, a 33-year-old resident of Marshall and Indonesian citizen, was arrested by U.S. Immigration and Customs Enforcement (ICE) agents on March 27. He was in the United States on an active F-1 student visa, which was revoked without warning four days prior to his detainment."), https://www.marshallindependent.com/news/local-news/2025/04/marshall-resident-detained-by-ice-on-student-visa/.

Relatedly, this Court's order of setting aside Defendants' termination of Plaintiffs' and class members' F-1 student status can provide a critical form of relief and defense in removal proceedings. *See* <u>Exhibit U</u> at ¶3 (explaining an example where "once USCIS had granted reinstatement [of F-1 student status] to [a] student, the Immigration Judge granted [the student's] request to terminate the student's removal proceedings . . . because the student had gained lawful status" even when the student's visa was revoked).

### 3.    THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST WEIGHT HEAVILY IN PLAINTIFFS' FAVOR

Plaintiffs and class members face weighty hardships: inability to complete their studies and participate in practical programs, severe financial hardships, and potential detention and deportation. By contrast, Defendants have no substantial interest in terminating Plaintiffs' and class members' F-1 student status not pursuant to the regulations. Indeed, "Congress's expressed intent to allow foreign students to pursue education opportunities in the United States without interference" weighs in Plaintiffs' and class members' favor. *Liu*, 1:25-cv-133-SE-TSM, ECF 13 at 4-5.

Defendants have no legitimate interest in enforcing their unlawful termination or in exceeding Defendants' statutory and regulatory authority by terminating Plaintiff's F-1 student status in a manner that is contrary to federal law, and "the public interest is harmed by the enforcement of [termination determination] repugnant to the United States Constitution." *Tirrell v. Edelblut*, No. 24-CV-251-LM-TSM, 2024 WL 3898544, at *6 (D.N.H. Aug. 22, 2024). *See, e.g., Jie Fang*, 935 F.3d at 176 ("Purported 'fraudulent enrollment' in an institution is not a statutorily authorized reason for termination a student's F-1 [student] status.") (citing 8 C.F.R. § 214.1(d)).

Thus, the balance of equities and the public interest both strongly favor preliminary injunction.

4.    **PLAINTIFFS HAVE DEMONSTRATED ELIGIBILITY FOR CLASS CERTIFICATION FOR PURPOSES OF PRELIMINARY INJUNCTIVE RELIEF**

Plaintiffs have demonstrated eligibility for class certification for purposes of preliminary injunctive relief.  As explained in Plaintiffs' separate Motion for Class Certification, Plaintiffs seek preliminary injunctive relief for themselves and for putative class members consisting of:

> All current or future students at (and Optional Practical Training participants affiliated with) any educational institutions (including colleges and universities) in New Hampshire, Massachusetts, Maine, Rhode Island, and Puerto Rico who had their F-1 student status terminated and had their SEVIS immigration record correspondingly terminated by Defendants on or after March 1, 2025 where Defendants' student status termination was neither (i) based on the criteria set forth in 8 C.F.R. § 214.1(d), (ii) because the student failed to maintain student status based on the criteria set forth in 8 C.F.R. § 214.1(e)-(g), nor (iii) because the student failed to make normal progress toward completing a course of study under 8 C.F.R § 214.2(f)(5)(i).  This class excludes any current student or Optional Practical Training participant who otherwise satisfies this class definition but who has a pending lawsuit challenging the termination of student status or a SEVIS record.

This Court has also permitted a provisional certification of a proposed class for the limited purpose of providing preliminary relief.  *See Gomes v. Acting Sec'y*, No. 20-cv-453-LM, 2020 U.S. Dist. LEXIS 77945, at *2 (D.N.H. May 4, 2020 ("The court will provisionally certify the proposed class for the limited purpose of holding expedited bail hearings for class members."); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 328 (D.D.C. 2018) ("To achieve meaningful relief with respect to DHS's allegedly unlawful actions, Plaintiffs sensibly ask this Court to provisionally certify a class.").

Class Plaintiffs are currently only seeking through this Motion expedited treatment and resolution of their request to certify the Regulatory Class for the claim in Count 1 of the Class Action Complaint.  Immediate (or even provisional) certification of the Regulatory Class will permit this Court to provide broad-based, preliminary through this Motion for Preliminary

Injunction to scores of injured students throughout New Hampshire, Massachusetts, Maine, Rhode Island, and Puerto Rico who are being irreparably harmed.

## 5.    NO SECURITY SHOULD BE REQUIRED

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." A district court has "substantial discretion to dictate the terms of an injunction bond." *HCC Specialty Underwriters, Inc. v. Woodbury*, 289 F. Supp. 3d 303, 330 (D.N.H. 2018) (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Eastern Airlines, Inc.*, 925 F.2d 6, 9 (1st Cir. 1991)).

For example, in *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, the court set a nominal bond of zero dollars in connection with the preliminary injunction sought by plaintiffs to protect their First and Fifth Amendment rights. No. 1:25-CV-00333-ABA, 2025 WL 573764, at *30 (D. Md. Feb. 21, 2025). The court determined that a bond of the size the government appeared to seek would essentially forestall plaintiffs' access to judicial review. *Id.*

Here, the Court should not require security in this case based on the Plaintiffs' likelihood of success in prevailing on the claims and the fact that there is no realistic likelihood of harm to Defendants from enjoining their illegal conduct.

## CONCLUSION

Accordingly, as outlined in the accompanying proposed order, Plaintiffs request that the Court grant this Motion for a Preliminary Injunction.

Plaintiffs and similarly situated members,

By and through their Counsel,

Dated: April 18, 2025

Respectfully submitted,

Ronald L. Abramson (NH Bar: 83593)
SHAHEEN & GORDON P.A.
180 Bridge Street
Manchester, NH 03104
603.792.8472
rabramson@shaheengordon.com

/s/ SangYeob Kim
Gilles R. Bissonnette (NH Bar: 265393)
Henry Klementowicz (NH Bar: 21177)
SangYeob Kim (NH Bar: 266657)
Chelsea Eddy (NH Bar: 276248)
AMERICAN CIVIL LIBERTIES UNION OF
   NEW HAMPSHIRE FOUNDATION
18 Low Avenue
Concord, NH 03301
603.227.6678
gilles@aclu-nh.org
henry@aclu-nh.org
sangyeob@aclu-nh.org
chelsea@aclu-nh.org

Carol Garvan (NH Bar: 21304)
Zachary L. Heiden*
Heather Zimmerman*
AMERICAN CIVIL LIBERTIES UNION OF
MAINE FOUNDATION
P.O. Box 7860
Portland, Maine 04112
207.619.8687
cgarvan@aclumaine.org
heiden@aclumaine.org
hzimmerman@aclumaine.org

Fermín L. Arraiza-Navas*
#215705 (US District Court Puerto Rico)
AMERICAN CIVIL LIBERTIES UNION
PUERTO RICO CHAPTER
Union Plaza, Suite 1105
416 Avenida Ponce de León
San Juan, Puerto Rico 00918
787.753.9493
farraiza@aclu.org

Lynette Labinger*
Cooperating counsel,
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF RHODE ISLAND
128 Dorrance Street, Box 710
Providence, RI 02903
401.465.9565
LL@labingerlaw.com

*Counsel for Plaintiffs*
*\* Application for admission pro hac vice forthcoming*

27