# EXHIBIT NN

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| MANIKANTA PASULA, et al., *Plaintiffs*, v. U.S. DEPARTMENT OF HOMELAND SECURITY, et al., *Defendants*. | Case No. 1:25-cv-156-SM-TSM |

### *Updated* Declaration of Dahlia M. French, Esq.

I, Dahlia M. French, declare the following under pain and penalty of perjury:

1. I am over 18 years of age and am fully competent to make this declaration. I have over 25 years of experience as a licensed immigration attorney. I earned my Juris Doctor in 1993, received bar admission in Connecticut (1993) and Ohio (1994) and have practiced immigration and international tax law since 1994. I am also admitted in the US Tax Court and the Federal District Court for the District of Northern Indiana.

2. Since obtaining my license in December of 1993, I have specialized in immigration law, and specifically in academic immigration. I have been a member of the American Immigration Lawyers Association ("AILA") since January of 1998. As a member of AILA, I have served in various volunteer positions, including providing guidance to members on academic immigration issues, through practice advisories, speaking engagements, book chapter contributions, and answering direct questions on listservs. I am currently Managing Attorney in the law firm French Legal.

3. I practiced in private law from 1993 to 2005, then transitioned to in-house immigration roles at the University of Virginia, Vanderbilt University, and Texas Tech

University Health Sciences Center, from 2005 to 2021. With 16 years leading immigration offices in higher education, I've served as a Designated School Official (DSO), Alternate Responsible Officer (ARO), and Responsible Officer (RO). My immigration law practice focuses on academic, medical, business, and family immigration, with expertise in F-1, J-1, and M-1 visa categories, their derivatives, and institutional sponsorship obligations — including detailed knowledge of the F-1 international student program, the Student & Exchange Visitor Information System (SEVIS), and the laws, regulations, and legal guidance related to SEVIS and international students in F-1 status.

4. I am a sought-after speaker at immigration webinars and conferences, provide expert advice and mentorship to colleagues, and have authored book chapters, journal articles, and practice advisories on academic immigration matters. I am considered a subject matter expert on academic immigration and issues affecting individuals in F-1, J-1, or M-1 visa status and the J-1 Exchange Visitor program

5. As of 2003, all US academic entities who wish to sponsor international students must go through a certification application process (for F and M sponsorship permission) or designation process (for J sponsorship permission). Each visa category has its nuances. F-1 status is available from kindergarten to post-secondary education.

6. Increased national security after the 9/11 attacks led to the creation of DHS and the restructuring of INS into three separate agencies: USCIS, ICE, and CBP. Specific attention was placed on monitoring of international students because most of the 9/11 terrorists entered the USA as international students. DHS joined with DOS to create a Student & Exchange Visitor Program (SEVP) and the management and compliance

system SEVIS (Student & Exchange Visitor Information System). Oversight of SEVP was given to ICE.

7. SEVIS is the acronym for the Student & Exchange Visitor Information System that is used to monitor and manage persons in F-1, J-1, or M-1 visa status and their dependents.

8. Schools sponsoring F-1 Students be certified by SEVP. As part of the SEVP certification process, schools must designate one employee as a Principal Designated School Official (PDSO) and at least one additional employee as a Designated School Official (DSO). Only the PDSO and DSO (or multiple DSOs) are given access to the SEVIS database. These international student officials are a primary point of contact for both an F-1 student, and responsible for SEVIS record terminations.

9. A DSO will work with incoming international students to get the information and documentation needed to create an individual SEVIS record for each. Each student record has a distinct SEVIS number. After record creation is completed, the DSO will print and sign Form I-20, "Certificate of Eligibility for Nonimmigrant Student Status," and forward that document to the student to obtain an F-1 visa from a US consulate, or F-1 visa status approval via an I-539 application with USCIS. Individuals outside the USA request CBP admission in F-1 visa status; individuals in the USA receive F-1 change of status approval with the standard I-94 attachment.

10. After entering the USA, the F-1 student reports to the DSO, enrolls and begins attending school, and the DSO updates the SEVIS record to confirm the student is duly enrolled in a full-time program of study.

11. To maintain visa status, F-1 students must follow specific requirements including: maintaining a full-time course load each semester (with an exemption given

for the final semester if less than full-time credits are needed to graduate); refraining from any unauthorized employment and only participating in authorized employment whether on-campus or off-campus; reporting to the DSO before taking any actions that affect the SEVIS record such as dropping to part-time status, taking medical leave, withdrawing from the program, participating in academic internships, and changing visa status; reporting to the DSO at the start of each session or semester or use whatever method the DSO requires to confirm enrollment each semester.

12. F-1 student status continues as long as the nonimmigrant continues to study in the USA. The student's I-94 will have a "Duration of Status" or "D/S" annotation rather than a fixed end date. F-1 status includes all periods of approved post-degree completion employment authorization.

13. Duration of Status (D/S) is unique. Unlike other visa statuses that have a fixed I-94 end date, individuals with a D/S end date are treated differently. When they have a violation of status, they are not immediately out of status or unlawfully present in the USA. Instead, they are only out of status and unlawfully present when either (1) an immigration judge states that they are during removal proceedings; or (2) when USCIS states that they are during adjudication of an immigration benefit application or petition. While a violation of status is serious and can lead to deportation, it does not immediately become an out of status and unlawful presence issue until USCIS or an immigration judge determines this. That means penalties attached to being out of status and unlawfully present do not attach to F-1 students immediately upon a violation occurring. When a violation of status occurs, the DSO terminates the SEVIS record. I know of no situation where ICE terminated the SEVIS record. In fact, even if ICE or SEVP are aware of a

violation, their practice is to notify the DSO of the violation and ask the DSO to investigate the matter and terminate the SEVIS record, if termination is warranted.

14. US consulates will revoke a visa when they receive information that an F-1 student was charged with a DUI or DWI offense. Consulates rarely provisionally revoke an F-1 visa for any other misdemeanor offenses or derogatory reasons.

15. Both the Department of State and ICE have stated that visa revocation has no effect on visa status. Those statements are correct and F-1 students and their sponsoring schools have relied on them to provide guidance to students with visa revocations. The statement from ICE clearly states that even after visa revocation an F-1 student maintains status, and the agency will contact the DSO to confirm the student is maintaining visa status. There has been no time when ICE terminated a SEVIS record solely due to visa revocation; an FBI criminal check "hit"; or even evidence of a misdemeanor conviction. This is because, by its own guidance, ICE knows that visa revocation does not equate to a loss of visa status or trigger SEVIS record termination.

16. A SEVIS record can be terminated due to some action by the F-1 student that requires termination; some mistake by the DSO that triggers termination; or some mistake by an immigration agency that creates a termination event. In short, SEVIS record termination does not mean the F-1 student engaged in some misconduct. It can occur even if the student is doing everything required to maintain F-1 visa status. Additionally, the reasons to terminate a SEVIS record are clearly articulated in SEVIS guidance and regulations. Having a misdemeanor conviction, or merely a fingerprint/name "hit" in the FBI database, does not trigger SEVIS record termination, and has never been used as a basis to terminate a record (or deny a visa). Additionally,

having a visa revoked by the Department of State is also not, in and of itself, without any further review, a reason to terminate a student's SEVIS record.

17. Between April 4, 2025 and April 11, 2025, I observed and learned of approximately two hundred international students whose SEVIS record was terminated with a terminating reason of "failure to maintain status . . . ."

18. On or about April 9, 2025, I also observed that several of these students' SEVIS record termination reasons changed to "other . . . ." The "failure to maintain status" description was deleted from the reason. The change is a significant correction in behavior for ICE. With the previous terminations, ICE acted as a DSO, using the termination dropdown menu available to DSOs. With this change, ICE is now using the termination dropdown menu available only to Student & Exchange Visitor (SEVP) staff.

19. Evidence of the termination options available to different parties is at https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons. The termination reasons available to ICE/SEVP are on the "SEVP-Only Termination Reasons" table. While this change confirms ICE is doing these terminations, and now doing them within the parameters of SEVIS requirements, it still does not provide the regulatory basis for these terminations. The reasons given are not within those permitted by SEVIS regulations and guidance.

20. I am not a party to this action or proceeding. I am aware of the facts stated herein of my own knowledge, and, if called to testify, I could and would competently so testify.

Executed on April 19, 2025, in Houston, TX.

                                                 _____
                                                 Dahlia M. French, Esq.