**UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| MANIKANTA PASULA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00156-JL-TSM |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| HOMELAND SECURITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATUTORY AND REGULATORY FRAMEWORK ............................................... 3

    A.    The F-1 Nonimmigrant Student Classification ................................................... 3

    B.    The Student and Exchange Visitor Information System (SEVIS) ....................... 5

    C.    The Privacy Act of 1974 ..................................................................................... 6

FACTS AND PROCEDURAL HISTORY ................................................................... 7

STANDARD OF REVIEW ........................................................................................... 10

ARGUMENT .................................................................................................................. 11

I.    Injunctive Relief is Not Available to Plaintiffs Because They Have Not Shown
Immediate, Irreparable Harm ...................................................................................... 11

II.    Plaintiffs Have Failed to Demonstrate a Likelihood of Success on The Merits ............. 14

    A.    There Is No Case Or Controversy Before The Court Because SEVP Did Not
Terminate Plaintiffs' F-1 Nonimmigrant Status ................................................ 14

    B.    Plaintiffs Are Unlikely to Succeed on The Merits of Their APA Claim ............. 16

        1.    There is No Final Agency Action For This Court to Review .................. 16

        2.    Plaintiffs Cannot Show The Agency's Actions Were Contrary To Law
Because They Misapprehend The Scope Of 8 C.F.R. § 214.1(d) ............ 19

    C.    Plaintiffs' Claim Sounds In The Privacy Act And Thus There Is No Waiver
Of Sovereign Immunity Under The APA. ........................................................ 20

        1.    Sovereign Immunity ................................................................................ 21

        2.    The Plaintiffs' Claims Satisfy The *Cambranis* Test Such That It
Meets The "Any Other Statute" Proviso Of § 702 Of The APA ............. 22

        3.    The Privacy Act Expressly Precludes The Relief Sought ....................... 24

III.    The Balance Of Equities And Public Interest Favor The Government ........................... 26

IV.     Plaintiffs' Claims Related To Class Certification Are Outside The Scope Of The Preliminary Injunction Motion ........................................................................... 27

V.      The Court Should Require Plaintiffs To Post A Bond. ................................... 28

**CONCLUSION** ........................................................................................................... **29**

**CERTIFICATE OF SERVICE** ................................................................................ **31**

## TABLE OF AUTHORITIES

### CASE LAW

*Barouch v. United States DOJ*,
  962 F. Supp. 2d 30 (D.D.C. 2013) ...............................................................25

*Bennett v. Isagenix Int'l LLC*,
  118 F.4th 1120 (9th Cir. 2024) ....................................................................13

*Bennett v. Spear*,
  520 U.S. 154 (1997) ......................................................................................16

*Berge v. United States*,
  949 F. Supp. 2d 36 (D.D.C. 2013) ...............................................................28

*Blackie's House of Beef, Inc. v. Castillo*,
  659 F.2d 1211 (D.C. Cir. 1981) ....................................................................26

*Block v. North Dakota*,
  461 U.S. 273 (1983) ................................................................................ 20, 23

*Cambranis v. Blinken*,
  994 F.3d 457 (5th Cir. 2021) ...........................................................21, 22, 25

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*,
  370 F.3d 151 (1st Cir. 2004) ............................................................2, 10, 11

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ......................................................................................11

*Compere v. Riordan*,
  368 F. Supp. 3d 164 (D. Mass. 2019) ...........................................................10

*Damus v. Nielsen*,
  313 F. Supp. 3d 317 (D.D.C. 2018) ..............................................................28

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
  601 U.S. 42 (2024) ........................................................................................20

*Doe v. Trustees of Dartmouth Coll.*,
    597 F. Supp. 3d 511 (D.N.H. 2022)...................................................... 10, 11

*El Badrawi v. Dep't of Homeland Sec.*,
    579 F. Supp. 2d 249 (D. Conn. 2008)..............................................20, 21, 25

*El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*,
    959 F.2d 742 (9th Cir. 1992)........................................................................26

*FDIC v. Meyer*,
    510 U.S. 471 (1994)....................................................................................21

*Gen. Tel. Co. v. Falcon,*
    457 U.S. 147 (1982)....................................................................................27

*Global NAPs, Inc. v. Verizon New England, Inc.,*
    489 F.3d 13 (1st Cir. 2007)..........................................................................28

*Hill v. Air Force,*
    795 F.2d 1067 (D.C. Cir. 1986)...................................................................25

*Holistic Candlers and Consumer's Ass'n v. FDA*,
    664 F.3d 940 (D.C. Cir. 2012)......................................................................16

*Jelena Liu v. Noem,*
    No. 1:25-cv-00716-JPH-TAB, 2025 WL 1141023 (S.D. Ind. Apr. 17, 2025).....12

*Jie Feng v. ICE,*
    935 F.3d 172 (3d Cir. 2019)........................................................................17

*Kondapally v. U.S. Citizenship & Immigr. Servs.*,
    557 F. Supp. 3d 10 (D.D.C. 2021) ........................................................ 13, 18

*Lane v. Pena,*
    518 U.S. 187 (1996)....................................................................................21

*Maine Forest Prods. Council v. Cormier*,
    51 F.4th 1 (1st Cir. 2022)............................................................................10

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
  567 U.S. 209 (2012) ........................................................................... 22, 25

*Nat'l Veterans Legal Servs. Program v. United States DOD*,
  990 F.3d 834 (4th Cir. 2021) ...................................................................16

*New Comm Wireless Servs., Inc. v. SprintCom, Inc.*,
  287 F.3d 1 (1st Cir. 2002) ..........................................................................2

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
  434 U.S. 1345 (1977) ...............................................................................26

*Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*,
  16 F.3d 1032 (9th Cir. 1994)....................................................................28

*Nken v. Holder*,
  556 U.S. 418 (2009) ...................................................................... 2, 13, 26

*Quinn v. Stone*,
  978 F.2d 126 (3d Cir. 1992).....................................................................23

*Raven v. Panama Canal Co.*,
  583 F.2d 169 (5th Cir. 1978)....................................................................25

*SharkNinja Operating LLC*,
  No. 19-CV-12125-ADB, 2019 WL 7578466, n.1 (D. Mass. Nov. 26, 2019)........2

*Silva v. Gonzales*,
  463 F.3d 68 (1st Cir. 2006).........................................................................4

*Taylor v. U.S. Treas. Dep't*,
  127 F.3d 470 (5th Cir. 1997)....................................................................25

*Textron Inc. v. Comm'r of Internal Revenue*,
  336 F.3d 26 (1st Cir. 2003).......................................................................19

*Together Emps. v. Mass Gen. Brigham Inc.*,
  32 F.4th 82 (1st Cir. 2022).......................................................................10

*Touchstone Rsch. Grp. LLC v. United States,*
    No. 18-CV-3451 (OTW), 2019 WL 4889281 (S.D.N.Y. Oct. 3, 2019) ....... 20, 21

*United States v. Martinez-Fuerte*,
    428 U.S. 543 (1976) ................................................................................26

*United States* v. *Sherwood*,
    312 U.S. 584 (1941) ................................................................................21

*USA Farm Labor, Inc. v. Micone*,
    No. 23-2108, 2025 WL 586339, 2025 U.S. App. 4200 (4th Cir. Feb. 24, 2025).27

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*,
    714 F.3d 186 (4th Cir. 2013) ....................................................................16

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ................................................................................26

*Westcott v. McHugh*,
    39 F. Supp. 3d 21 (D.D.C. 2014) .......................................................... 20, 21

*Winter v. Natural Resources Defense Council,*
    555 U.S. 7 (2008) ..........................................................................10, 11, 26

*Xiteng Liu v. U.S. Citizenship & Immigr. Servs., Texas Serv. Ctr.*,
    No. CV 3:06-3255-CMC-JRM, 2008 WL 11429536 (D.S.C. Feb. 27, 2008)
    *report and recommendation adopted as modified*, No. CV 3:06-3255-CMC-JRM,
    2008 WL 11429537 (D.S.C. Mar. 14, 2008), *aff'd*, 317 F. App'x 361 (4th Cir.
    2009) ....................................................................................................13

*Yerrapareddypeddireddy v. Albence,*
    No. CV-20-01476-PHX-DWL, 2021 U.S. Dist. LEXIS 221212 (D. Ariz. Nov. 16,
    2021) ....................................................................................................17

*Yunsong Zhao v. Virginia Polytechnic Inst. & State Univ.*,
    2018 WL 5018487 (W.D. Va. Oct. 16, 2018) ................................................17

## FEDERAL STATUTES

5 U.S.C. § 552a ................................................................................... 6, 7, 25

5 U.S.C. § 552a(a)(2) ................................................................................ 24

5 U.S.C. § 552a(a)(5) ................................................................................. 6

5 U.S.C. § 552a(b) .................................................................................... 22

5 U.S.C. § 552a(d) ..................................................................................... 6

5 U.S.C. § 552a(d)(1) ................................................................................ 22

5 U.S.C. § 552a(d)(1)-(4) ...................................................................... 6, 23

5 U.S.C. § 552a(g)(1)-(5) ........................................................................... 23

5 U.S.C. § 552a(d)(2) ................................................................................ 23

5 U.S.C. § 552a(d)(2)-(3) ........................................................................... 25

5 U.S.C. § 552a(d)(3) ................................................................................ 25

5 U.S.C. § 702 ............................................................................. 21, 24, 25

5 U.S.C. § 706 .......................................................................................... 16

6 U.S.C. § 252(a)(4) ................................................................. 1, 5, 16, 26

8 U.S.C. § 1201(i) ..................................................................................... 19

8 U.S.C. § 1229a ...................................................................................... 16

8 U.S.C. § 1229a(a) ................................................................................... 14

8 U.S.C. § 1229a(c) ................................................................................... 14

8 U.S.C. § 1229a(c)(5) ............................................................................... 14

8 U.S.C. § 1372...................................................................................*passim*

8 U.S.C. § 1372(a)(1)..............................................................................5

8 U.S.C. § 1372(c)..................................................................................16

8 U.S.C. § 1252(a)(5)..............................................................................16

8 U.S.C. § 1252(b)(9)..............................................................................16

## FEDERAL REGULATIONS

8 C.F.R. § 214.1(d)................................................................................19

8 C.F.R. § 214.2(f)......................................................................13, 19, 20

8 C.F.R. § 214.2(f)(1)(i)............................................................................4

8 C.F.R. § 214.2(f)(5)...........................................................................4, 15

8 C.F.R. § 214.2(f)(5)(i)............................................................................4

8 C.F.R. § 214.2(f)(6)(iii)..........................................................................4

8 C.F.R. § 239.1(a)..................................................................................5

8 C.F.R. § 239.3......................................................................................5

8 C.F.R. § 274a.12(c)(3) ....................................................................12, 13

8 C.F.R. § 274a.13(a)(1) ..........................................................................12

8 C.F.R. § 1003.14..................................................................................14

8 C.F.R. § 1239.1.............................................................................16, 17

8 C.F.R. § 1239.1(a)................................................................................14

22 C.F.R. pt. 41.....................................................................................29

## FEDERAL RULE OF CIVIL PROCEDURE

Fed. R. Civ. P. 65(c) ...................................................................................28

## LEGISLATIVE HISTORY

H.R. Rep. No. 93-1416 ...............................................................................23

H.R. Rep. No. 16373 ..................................................................................24

## PUBLIC LAW

Pub. L. No 114-126 ......................................................................................7

Pub L. No. 93-579 ................................................................................. 6, 23

## FEDERAL REGISTER

34 Fed. Reg. 124 ........................................................................................19

82 Fed. Reg 7860-61 ............................................................................. 7, 25

84 Fed. Reg. 3493-94 ............................................................................ 7, 25

85 Fed. Reg. 74,875 ...................................................................................29

## MISCELLANEOUS

Dep't of Homeland Security, *F-1 Optional Practical Training (OPT),* available at https://studyinthestates.dhs.gov/sevis-help-hub/student-records/fm-student-employment/f-1-optional-practical-training-opt#:~:text=Note:%20Any%20OPT%20status%20updates,%20the%20part%20of%20the%20DSO.&text=Required%20paperwork:,days%20of%20the%20DSO's%20recommendation (last visited May 1, 2025)..... 13

Dep't of Homeland Security, *International Student Life Cycle* available at https://studyinthestates.dhs.gov/students/get-started/international-student-life-cycle (last visited May 1, 2025) ...............................................................................................3

Dep't of Homeland Security, *Students and the Form I-20* available at
    https://studyinthestates.dhs.gov/students/prepare/students-and-the-form-i-20 (last visited May
    1, 2025) ................................................................................................................................ 4, 15

Dep't of Homeland Security, *Study in the States* available at http://studyinthestates.dhs.gov (last
    visited May 1, 2025) ................................................................................................................. 18

U.S. Citizenship and Immigration Services, *USCIS Policy Manual, Vol. 2, Part F, Chapter 2
    (Eligibility Requirements)*, available at https://www.uscis.gov/policy-manual/volume-2-part-f-
    chapter-2. (last visited May 1, 2025). ........................................................................................ 3

U.S. Dep't of Justice *Source Book on Privacy available* at
    https://www.justice.gov/opcl/paoverview_sourcebook/download (last visited May 1, 2025) . 24

U.S. Immigration and Customs Enforcement, *Student and Exchange Visitor Information
    System,"* available at at: https://www.ice.gov/sevis/overview (last visited May 1, 2025)
    ..................................................................................................................................................... 5

# INTRODUCTION

Administering and enforcing the immigration laws of the United States is the sovereign prerogative of the Executive Branch. In executing this enforcement mission as it relates to nonimmigrant (*i.e.*, temporary) foreign students, Congress mandated that the Department of Homeland Security ("DHS"), through U.S. Immigration and Customs Enforcement ("ICE") and the Student Exchange Visitor Program ("SEVP") "develop and conduct a program" to collect certain information from approved institutions of higher education in the United States with respect to aliens seeking F-1 student status, and use that information to carry out its enforcement functions. *See* 6 U.S.C. § 252(a)(4); 8 U.S.C. § 1372. Under this authority, DHS (ICE and SEVP) established and uses the Student Exchange Visitor Information System ("SEVIS"). The five named Plaintiffs in this case, all of whom have active SEVIS records and hold F-1 student status, are challenging SEVP's previous revision of the SEVIS database records about them, which changed the database records' status from "active" to "terminated." In so doing, SEVP did not delete the records from the database or terminate the students' F-1 nonimmigrant student status.[1] And to be clear, Plaintiffs' SEVIS records are currently "active." *See* Exhibit 1, SEVIS records. Thus, Plaintiffs' assertions that their F-1 nonimmigrant status has been terminated is based upon a faulty premise and a misunderstanding of U.S. immigration laws and procedures.

The Court should deny Plaintiffs' request for preliminary injunctive relief because Plaintiffs have not met any four factors this Court is required to consider. At the threshold, Plaintiffs suffer from no immediate, irreparable injury. Their SEVIS database records are active and they provide no evidence of an adverse adjudication by U.S. Citizenship and Immigration

---

[1] Plaintiffs concede they are not challenging any decision to revoke their F-1 visas. *See* Pls.' Mot., ECF No. 5-1 at 6.

Services ("USCIS") or by an Immigration Judge ("IJ") on their F-1 status. Under First Circuit law, this deficiency alone is enough to deny the preliminary injunction motion. *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). And any claim of potential, future injury related to their SEVIS records is exactly that—claims of future, speculative harm. Furthermore, Plaintiffs' purported inability to "make normal progress in their studies" (which they have not shown is the case with an active SEVIS record) does not rise to the level of irreparable harm and Plaintiffs have failed to demonstrate that they would be unable to transfer any completed credits and other accomplishments to another college or university either in their home country or in another country (*e.g.*, Canada) and complete their programs. Moreover, Plaintiffs' claim of injury by "*potential* detention and deportation," Pls.' Mot. at 24 (emphasis added), is not only speculative, but the Supreme Court has held that "the burden of removal alone cannot constitute the requisite irreparable injury" necessary for preliminary injunctive relief. *See, e.g., Nken v. Holder*, 556 U.S. 418, 435 (2009).

Moreover, Plaintiffs have not shown a likelihood of success on the merits of their Administrative Procedure Act ("APA") claims because the SEVIS record change was not a final agency action because it did not adjudicate or terminate their nonimmigrant status, and their challenge is foreclosed by the Privacy Act. Moreover, Plaintiffs apparently recognize the deficiencies with their Fifth Amendment Due Process and detention claims because they do not rely on those claims in support of their preliminary injunction request. *See* Pls.' Mot. at 1 (citing Count 1 only); *New Comm Wireless Servs., Inc. v. SprintCom, Inc.,* 287 F.3d 1, 9 (1st Cir. 2002) (plaintiff bears the burden to show the likelihood of success)*; see also iRobot Corp. v. SharkNinja Operating LLC*, No. 19-CV-12125-ADB, 2019 WL 7578466, at *1, n.1 (D. Mass. Nov. 26, 2019)

(declining to evaluate additional claims in the complaint that were not raised as a basis for preliminary injunctive relief).

Finally, the public interest weighs heavily against injunctive relief because the Executive's ability to enforce U.S. immigration laws is not only significant but also a sovereign prerogative.

For these reasons, as set forth below, the Court should deny Plaintiffs' request for a preliminary injunction in its entirety.

## STATUTORY AND REGULATORY FRAMEWORK

### A.    The F-1 Nonimmigrant Student Classification

The Immigration and Nationality Act ("INA"), as amended, allows for the entry of an alien, who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study. . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i) (hereinafter, "F-1 status"). To qualify for F-1 nonimmigrant status, a foreign national is required to (1) apply and gain admission to an approved U.S. educational institution, (2) obtain a "Certificate of Eligibility for Nonimmigrant (F-1) Student Status (a "Form I-20"), issued by the school, and (3) submit a visa application at the U.S. Embassy or Consulate abroad. *See* https://studyinthestates.dhs.gov/students/get-started/international-student-life-cycle; *see also* USCIS Policy Manual, Vol. 2, Part F, Chapter 2 (Eligibility Requirements), *available at* https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-2. Once a student has followed the process and received an F-1 visa, to be admitted in F-1 status at a U.S. port of entry, an applicant must present a Form I-20, issued by a certified school in the student's name; present documentary evidence of financial support; and demonstrate he or she intends to attend the school specified on

the student's visa. 8 C.F.R. § 214.2(f)(1)(i); *see also* USCIS Policy Manual, Vol. 2, Part F, Chapter 2 (Eligibility Requirements), *available at* https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-2. To maintain F-1 status, at a minimum a nonimmigrant student must "pursue a full course of study" or "engage in authorized practical training." 8 C.F.R. § 214.2(f)(5)(i); (f)(6)(iii); *see also id.* §§ (f)(7)(iii) (failure to complete program on time because of academic probation or suspension); (f)(12)(ii) (failure to comply with OPT reporting requirements); (f)(9) (restrictions on employment).

Individuals admitted in F-1 status do not have a set time period for which they are admitted to the United States but instead are permitted to remain in the United States for the duration of status (or "D/S"), *see Silva v. Gonzales*, 463 F.3d 68, 69 (1st Cir. 2006), which "is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5). During that time, the students use their Form I-20 as proof of their status, for example to apply for a driver's license or other benefits, if available to them. *See* https://studyinthestates.dhs.gov/students/prepare/students-and-the-form-i-20 ("Applying for Benefits"). The Form I-20 "proves that [the student is] legally enrolled in a program of study in the United States." *Id.*

An F-1 student admitted for the duration of status, who receives a decision from USCIS (through reinstatement or application for a change of status or other immigration benefit) concluding that he or she violated his or her status will begin to accrue unlawful presence only after the request for another immigration benefit is denied. *See* USCIS Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," at 25 found online at:

https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF    (last

visited May 1, 2025); *see also* 8 C.F.R. § 239.3.

**B.    The Student and Exchange Visitor Information System (SEVIS)**

Congress mandated that "[t]he [Secretary of Homeland Security][2], in consultation with the

Secretary of State and the Secretary of Education, . . . develop and conduct a program to collect

[certain information] from approved institutions of higher education, other approved educational

institutions, and designated exchange visitor programs in the United States [certain information]

with respect to aliens who have the status, or are applying for the status, of nonimmigrants under

subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372(a)(1). The

current implementation of that statutory section is through SEVIS, "which is a web-based system"

that DHS "uses to maintain information on Student and Exchange Visitor Program-certified

schools, F-1 and M-1 students who come to the United States to attend those schools, U.S.

Department of State-designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor

Program participants." *See* "ICE, Student and Exchange Visitor Information System," found

online at: https://www.ice.gov/sevis/overview (last visited May 1, 2025).

Section 1372 relates to the system of records that is used to maintain information about F,

J, and M students; it does not equate the records in the system to nonimmigrant status nor does it

authorize or provide a method to terminate nonimmigrant status via that system. *See* 8 U.S.C.

§ 1372. Further, Congress mandated that ICE shall administer the program to collect information

on nonimmigrant foreign students described in 8 U.S.C. § 1372 and "shall use" the information

collected in SEVIS "to carry out the enforcement functions of the agency." 6 U.S.C. § 252(a)(4).

---

[2] 8 U.S.C. § 1372 refers to the Attorney General, but those functions were transferred to
DHS in the Homeland Security Act of 2002.

In accordance with the Privacy Act of 1974, DHS "modif[ed], rename[d] and reissue[d]" the SEVIS database as "DHS/ICE-001 Student and Exchange Visitor Information System (SEVIS) System of Records." *See* 86 Fed. Reg. 69663 (Dec. 8, 2021).

### C.    The Privacy Act of 1974

The Privacy Act of 1974, Pub Law No. 93-579, 88 Stat 1896 (Dec. 31, 1974), codified at 5 U.S.C. § 552a (2018), establishes practices for federal agencies regarding the collection, maintenance, use, and dissemination of information about individuals within systems of records. *See* Pub. L. 93–579, § 2, Dec. 31, 1974, 88 Stat. 1896 (codified at 5 U.S.C. § 552a (notes). The Privacy Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by the Government's purported compliance failures. *See generally*, 5 U.S.C. § 552a. A system of records is defined by statute as a group of records under the control of an agency from which information is retrieved by the name of the individual or by some identifier assigned to the individual. 5 U.S.C. § 552a(a)(5).

Relevant here, 5 U.S.C. § 552a(d) addresses how an individual may access agency records, seek amendment to those records, exhaust administrative remedies prior to seeking judicial redress, and file a statement of disagreement to be included with the records. 5 U.S.C. § 552a(d)(1)-(4). After following the required steps to exhaust administrative remedies, a final determination by the agency head triggers the civil remedy provisions of §552a(g)(1)(A), which permit suit in district court to correct a record, and permits damages in certain instances if an individual is harmed by the government's incorrect records. *Id.* at (d)(3); (g)(1)(A)-(D).

In doing so, Congress also chose to limit the Privacy Act's provisions for access and redress to those who qualify as "a citizen of the United States or an alien lawfully admitted for permanent residence." *Id.* at 552a(a)(2). In a subsequent 2016 amendment under the Judicial Redress Act, Congress extended certain Privacy Act remedies to citizens of designated countries and granted

venue for such challenges to the U.S. District Court for the District of Columbia. 5 U.S.C. § 552a (statutory note), Pub. L. 114-126 (Feb. 24, 2016), 130 Stat. 282. Since then, the United Kingdom and majority of the countries of the European Union have been designated under the amendment. 82 Fed. Reg 7860-61 (Jan. 23, 2017); 84 Fed. Reg. 3493-94 (Feb. 12, 2019).

## FACTS AND PROCEDURAL HISTORY

The named Plaintiffs are five F-1 nonimmigrant students who attend universities located in New Hampshire and Massachusetts who allege that their SEVIS records were previously terminated, Compl. ¶¶ 49-98, but are currently active. *See* Exh. 1.

**Manikanta Pasula** is a citizen and national of India and a student at Rivier University in New Hampshire studying computer science. Compl. ¶¶ 49-51. According to Mr. Pasula, he entered the United States in F-1 status in 2024. *Id.* ¶ 51. Mr. Pasula concedes that, on March 25, 2024, he was arrested and charged with driving without a license. *Id.* ¶ 52; *see also* Exh. D (criminal record). He pled guilty and paid a fine. Compl. ¶ 52; *see also* Exh. D. On April 4, 2025, Rivier University informed Mr. Pasula that his visa was revoked and his SEVIS record was terminated. Compl. ¶ 55; *see also* ECF No. 5-5, Exhibit B to Pls.' Mot. (email from Rivier University); *see also* ECF No. 5-6, Exhibit C to Pls.' Mot. (email from U.S. Consulate General in Mumbai). Mr. Pasula's SEVIS record is currently active. *See* Exh. 1.

**Likhith Babu Gorrela** is a citizen and national of India and a student at Rivier University in New Hampshire studying computer information systems. Compl. ¶¶ 59-61. According to Mr. Gorrela, he entered the United States in F-1 status in 2023. *Id.* ¶ 61. Mr. Gorrela concedes that, on May 30, 2024, he was charged for driving without a license, and the charge was nolle prossed. *Id.* ¶ 63; *see also* ECF No. 5-11, Exh. H to Pls.' Mot. (criminal record). On April 4, 2025, Rivier University informed Mr. Gorrela that his SEVIS record was terminated. Compl. ¶ 64; *see also* ECF

No. 5-9, Exhibit F to Pls.' Mot. (email from Rivier University). According to Mr. Gorrela, his "SEVIS record was terminated due to what was labeled as involvement in criminal activity." ECF No. 5-8, Exhibit E to Pls.' Mot. ¶ 6 (declaration of Likhith Babu Gorrela). On April 8, 2025, Mr. Gorrela received an email from the State Department indicating that his visa was revoked. Compl. ¶ 65; *see also* ECF No. 5-10, Exhibit G to Pls.' Mot. (email from U.S. Consulate General in Hyderabad). Mr. Gorrela's SEVIS record is currently active. *See* Exh. 1.

**Thanuj Kumar Gummadavelli** is a citizen and national of India and a student at Rivier University in New Hampshire studying computer science. Compl. ¶¶ 69-71. According to Mr. Gummadavelli, he entered the United States in F-1 status in 2023. *Id.* ¶ 71. Mr. Gummadavelli concedes that, in August 2024, he was charged with speeding and for driving without a license. *Id.* ¶ 72; *see also* ECF No. 5-15, Exh. L to Pls.' Mot. (criminal record). The driving without a license charge was nolle prossed and he pled guilty to speeding and paid a fine. Compl. ¶ 72; *see also* Exh. L. On April 8, 2025, Rivier University informed Mr. Gummadavelli that his SEVIS record was terminated. ECF No. 5-13, Exhibit J to Pls.' Mot. (email from Rivier University). On April 11, 2025, Mr. Gummadavelli received an email from the State Department indicating that his visa was revoked. Compl. ¶ 75; *see also* ECF No. 5-14, Exhibit K to Pls.' Mot. (email from U.S. Consulate General in Mumbai). Mr. Gummadavelli's SEVIS record is currently active. *See* Exh. 1.

**Hangrui Zhang** is a citizen and national of China and a student at Worcester Polytechnic Institute in Massachusetts studying computer science. Compl. ¶¶ 77-79. According to Mr. Zhang, he entered the United States in F-1 status in August 2023. *Id.* ¶ 79. Mr. Zhang concedes that, in December 2024, he was arrested and charged with a misdemeanor. *Id.* ¶ 80; *see also* ECF No. 5-18, Exh. O to Pls.' Mot. (criminal case docket). According to Mr. Zhang, he was arrested and charged with shoplifting from Starbucks and maintains that he was "falsely accused" due to a

misunderstanding. ECF No. 5-16, Exh. M to Pls.' Mot. ¶ 5 (declaration of Hangrui Zhang). The case was dismissed after pretrial diversion. Compl. ¶ 80; *see also* Exh. O. On April 9, 2025, Mr. Zhang was informed that his SEVIS record was terminated. Compl. ¶ 81; ECF No. 5-17, Exhibit N to Pls.' Mot. (printout of SEVIS record). Mr. Zhang's SEVIS record is currently active. *See* Exh. 1.

**Haoyang An** is a citizen and national of China and a student at Worcester Polytechnic Institute in Massachusetts. Compl. ¶¶ 85-86. According to Mr. An, he entered the United States in F-1 status in August 2018. *Id.* ¶ 87. Mr. An concedes that, in September 2023, he was charged with a misdemeanor for driving without insurance, which was ultimately dismissed. *Id.* ¶ 94; *see also* ECF No. 5-21, Exh. R to Pls.' Mot. (criminal case docket). According to Mr. An, he rear-ended someone and he did not have valid car insurance and was told he needed to appear in court. ECF No. 5-19, Exh. P to Pls.' Mot. ¶ 9 (declaration of Haoyang An). Mr. An states that he was subsequently pulled over and arrested for failure to attend the initial hearing on the prior charge. *Id.* ¶ 11. He was taken to the station, fingerprinted, and posted bail. *Id.* Mr. An states that he later went to court and his case was dismissed. *Id.* ¶ 12; *see also* Exh. R. On April 9, 2025, Mr. An was informed that his SEVIS record was terminated. Compl. ¶ 95; ECF No. 5-20, Exhibit Q to Pls.' Mot. (printout of SEVIS record). On April 14, 2025, Mr. An received an email from the State Department indicating that his visa was revoked. Compl. ¶ 96; *see also* Exh. P ¶ 14. Mr. An's SEVIS record is currently active. *See* Exh. 1.

**Procedural History**. On April 18, 2025, Plaintiffs initiated this action. *See* Compl., ECF No. 1. Plaintiffs bring this action on behalf of themselves as well as two purported classes of similarly situated individuals. Compl. ¶¶ 99-100. Plaintiffs bring three causes of action; two on behalf of the classes and one on behalf of the named plaintiffs. Compl. ¶¶ 107-119. Count 1, the

only Count at issue in plaintiffs' preliminary injunction motion (*see* Pls.' Mot. at 19-22) contends that Defendants' purported "termination of Plaintiffs' and class members' F-1 student status is a final agency action" that "violates the Administrative Procedure Act (APA)." *Id.* ¶¶ 108-09.

On April 18, 2025, Plaintiffs filed a Motion for Class Certification. ECF Nos. 4, 4-1. On April 18, 2025, Plaintiffs filed their Preliminary Injunction Motion. ECF Nos. 5, 5-1. On April 25, 2025, the Court entered an endorsed briefing schedule on Plaintiffs' class certification and preliminary injunction motions. *See* Minute Order, April 25, 2025.

## STANDARD OF REVIEW

Preliminary injunctive relief is an extraordinary remedy. *Maine Forest Prods. Council v. Cormier*, 51 F.4th 1, 5 (1st Cir. 2022). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 85 (1st Cir. 2022) (quoting *Winter v. Natural Resources Defense Council,* 555 U.S. 7 (2008)). At the threshold, without subject matter jurisdiction, a party cannot demonstrate a likelihood of success on the merits of their claim. *Compere v. Riordan*, 368 F. Supp. 3d 164, 171 (D. Mass. 2019). Moreover, the First Circuit has held that "irreparable harm is a necessary threshold showing for awarding preliminary injunctive relief," *Charlesbank Equity Fund II*, 370 F.3d at 162. This means that "if the moving party cannot demonstrate that he is likely to suffer irreparable harm in the absence of a preliminary injunction, the remaining [*Winter*] factors become matters of idle curiosity" *Doe v. Trustees of Dartmouth Coll.*, 597 F. Supp. 3d 511, 513 (D.N.H. 2022) (McCafferty, J.) (citation omitted).

## ARGUMENT

**I.      Injunctive Relief is Not Available to Plaintiffs Because They Have Not Shown Immediate, Irreparable Harm.**

Irreparable harm must be likely absent an injunction, not merely possible. *Winter*, 555 U.S. at 22. And as the First Circuit has held, "irreparable harm is a necessary threshold showing for awarding preliminary injunctive relief," *Charlesbank Equity Fund II*, 370 F.3d at 162. Here, Plaintiffs have failed to establish any irreparable harm; their SEVIS records are all active, *see* Exh. 1, and Plaintiffs have provided no evidence that the purported harms they seek to avoid will befall them. Even if there had been immediate, irreparable harm—which Defendants do not concede— there is no immediate, irreparable harm *now*. The Court can and should deny Plaintiffs' preliminary injunction motion on this basis alone. *See Trustees of Dartmouth Coll.*, 597 F. Supp. 3d at 513.

First, Plaintiffs claim irreparable harm in the form of an inability to "make normal progress in their studies." Pls.' Mot. at 22. However, Plaintiffs cannot dispute that their SEVIS records are currently active. *See* Exh. 1. All harm asserted by Plaintiffs was based upon the previous termination of the SEVIS database records. *See, e.g.*, Pls.' Mot. at 22-23. With the records restored, there is no basis for any alleged harm, nor have Plaintiffs identified any. And, it is long settled that the fear of potential future harm cannot justify a preliminary injunction. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-11 (2013).

Plaintiffs offer nothing more than speculation in support of their claim of harm. For example, Plaintiff Zhang contends that the termination of his SEVIS record may "*potentially* postpone [his] degree completion." Exh. M ¶ 14 (emphasis added). Similarly, Plaintiff An suggests that, as a result of the SEVIS record termination, he "*might* not be able to attend the GQP course in person." Exh. P ¶ 15 (emphasis added). Plaintiff Gummadavelli "fear[s] not being able to complete and obtain [his] Master's degree," and is concerned that he "*may* not be able to complete

[his] studies." Exh. I ¶¶ 13-14 (emphasis added). Plaintiff Gorrela "fears that this termination [of his SEVIS record] has jeopardized [his] academic path and career." Exh. E ¶ 12. Such conclusory and speculative statements are insufficient to demonstrate irreparable harm. *Jelena Liu v. Noem*, No. 1:25-cv-00716-JPH-TAB, 2025 WL 1141023, at *3 (S.D. Ind. Apr. 17, 2025) ("But each plaintiff relies on a conclusory statement that they will not be able to complete their studies and has not designated evidence showing that they would not be able to resume and complete their academic programs if they prevail on the merits in this case.").

Plaintiffs provide no evidence that they are presently unable to attend classes at their colleges because of their current SEVIS records and F-1 nonimmigrant status, and even if they could, they have failed to demonstrate that they would be precluded from transferring their completed credits to another college or university either in their home countries or in another country (*e.g.*, Canada) and completing their respective programs. Moreover, any claim by Plaintiffs that an inability to complete their respective programs results in lost tuition money is not a claim at all—as they each received knowledge and credit during their programs in exchange for the tuition money spent to attend the universities.

Moreover, to the extent Plaintiffs fear any future impact on their ability to pursue Optional Practical Training ("OPT") as a result of their temporary SEVIS termination, *see*, *e.g.*, Exh A ¶ 10; Exh. E ¶ 12, this fear is both speculative and inapposite. First, no Plaintiff has provided any evidence that they have been unable to submit an application for OPT employment authorization to USCIS, or that USCIS has denied their OPT application. But more importantly, even if they could demonstrate that USCIS denied their application, OPT employment authorization, granted under 8 C.F.R. § 274a.12(c)(3), is a purely discretionary benefit. *See* 8 C.F.R. § 274a.13(a)(1) ("The approval of applications filed under 8 CFR 274a.12(c) … are within the discretion of

USCIS."); *id.* § 274a.12(c)(3) (discussing employment authorization of F-1 students); *Xiteng Liu v. U.S. Citizenship & Immigr. Servs., Texas Serv. Ctr.*, No. CV 3:06-3255-CMC-JRM, 2008 WL 11429536, at *2 (D.S.C. Feb. 27, 2008), *report and recommendation adopted as modified*, No. CV 3:06-3255-CMC-JRM, 2008 WL 11429537 (D.S.C. Mar. 14, 2008), *aff'd*, 317 F. App'x 361 (4th Cir. 2009) ("USCIS … has within its discretion the power to authorize F-1 students' employment in jobs directly related to their field of study, i.e. OPT, under 8 C.F.R. § 214.2(f)."); *see also F-1 Optional Practical Training (OPT)*, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/fm-student-employment/f-1-optional-practical-training-opt#:~:text=Note:%20Any%20OPT%20status%20updates,%20the%20part%20of%20the%20DSO.&text=Required%20paperwork:,days%20of%20the%20DSO's%20recommendation (last visited May 1, 2025); *see also Kondapally v. U.S. Citizenship & Immigr. Servs.*, 557 F. Supp. 3d 10, 25–27 (D.D.C. 2021) (collecting cases discussing the discretionary nature of employment authorization). Thus, no F-1 student can claim any kind of entitlement to a purely discretionary benefit, and any claim that Plaintiffs may face obstacles to applying for OPT in the future cannot serve as a basis for irreparable harm.

In addition, Plaintiffs assert an irreparable injury because they fear detention and deportation. Pls.' Mot. at 23. But any claims related to the possibility of removal proceedings do not constitute irreparable injury. *See Nken*, 556 U.S. at 435 ("[T]he burden of removal alone cannot constitute the requisite irreparable injury."). Moreover, Plaintiffs are free to depart the United States on their own. *See Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1129 (9th Cir. 2024). Thus, a fear of deportation is not an irreparable injury, particularly so here, where Plaintiffs have not

demonstrated that the commencement of removal proceedings against them are imminent.[3] While Plaintiffs cite to a news article regarding the detention of an F-1 student not party to this litigation, *see* Pls.' Mot. at 23, n.15, none of the named Plaintiffs have provided any evidence that they face imminent charges of deportability or that they have been issued Notices to Appear. The entirety of their alleged "injury" is based on conjecture, rumor and media reports of unrelated matters, which is far too speculative to satisfy the foundational irreparable injury requirement necessary for preliminary injunctive relief. Rather, each of the Plaintiffs' SEVIS records are currently active, *see* Exh. 1, and they have not provided any evidence of an adverse adjudication of their F-1 nonimmigrant status, further dispelling Plaintiffs' contentions that they may face detention and removal from the United States.

Accordingly, Plaintiffs have failed to establish any irreparable harm and under First Circuit law, the Court should deny their preliminary injunction motion on this basis alone.

**II.    Plaintiffs Have Failed to Demonstrate a Likelihood of Success on The Merits.**

    **A.    There Is No Case Or Controversy Before The Court Because SEVP Did Not Terminate Plaintiffs' F-1 Nonimmigrant Status.**

Plaintiffs readily admit that "[t]his lawsuit *only* challenges Defendants' termination of student status." Compl. ¶ 2 (emphasis added). This lawsuit is, therefore, premised on a misapprehension of the facts and the law. As stated by ICE's Senior Official within the National Security Division for Homeland Security Investigations, Andre Watson, changing a SEVIS record status to "terminated" does not terminate an individual's nonimmigrant *status. See* Exhibit 2,

---

[3] Removal proceedings are commenced with the issuance of a Notice to Appear ("NTA"). *See* 8 C.F.R. §§ 239.1(a), 1003.14,1239.1(a). If placed in removal proceedings, an Immigration Judge will determine whether an alien is removable as charged. 8 U.S.C. §§ 1229a(a), (c). That individual can then appeal to the Board of Immigration Appeals, *id.* § 1229a(c)(5), and if unsuccessful, can obtain Article III judicial review by filing a petition for review with the appropriate circuit court of appeals, and at that time, raise constitutional claims and other claims connected to detention and/or removability. *Id.* §§ 1252(a)(5), (b)(9).

Declaration of Andre Watson ("Watson Decl.") ¶ 11.[4] That is consistent with 8 U.S.C. § 1372, which authorizes the development and collection of information in SEVIS, and does not relate to adjudication of nonimmigrant status. *See* 8 U.S.C. § 1372. It is also consistent with the very nature of F-1 nonimmigrant status—for which an F-1 student is admitted into the United States for the duration of their studies or "D/S". 8 C.F.R. § 214.2(f)(5) (defining duration of status). It is also consistent with Plaintiffs' own attorney declaration submitted in support of their motion. *See* ECF No. 5-22, Exhibit S to Pls.' Mot. ¶ 12 (attesting that "F-1 student status continues as long as the nonimmigrant continues to study in the USA."). And it is consistent with the admission procedures for F-1 students, which require a Form I-20 that students are instructed to keep, maintain, and use to obtain benefits, because the "Form I-20 proves [a student is] legally enrolled in a program of study in the United States." *See* https://studyinthestates.dhs.gov/students/prepare/students-and-the-form-i-20. The only "facts" presented to show that Plaintiffs' nonimmigrant status was purportedly terminated consist of unsubstantiated statements from the students' schools. *See*, *e.g.*, Exh. B (email from Rivier University). But a college or university does not, and cannot, adjudicate F-1 nonimmigrant status. Only USCIS or an Immigration Judge is empowered to do so.

Because the ultimate relief Plaintiffs seek from this Court relates to F-1 nonimmigrant status, the entire premise of Plaintiffs' complaint is incorrect, and there is no case or controversy before the Court regarding Plaintiffs' F-1 nonimmigrant status.

---

[4] Exhibit 2 is the Declaration of Andre Watson submitted to this Court in *Liu v. Noem*, No. 1:25-cv-00133-SE-TSM, Dkt. No. 15-1.

B.    **Plaintiffs Are Unlikely to Succeed on The Merits of Their APA Claim.**

1.    **There is No Final Agency Action For This Court to Review.**

A final agency action is required for APA review. 5 U.S.C. § 706. An action is "final" when it (1) "mark[s] the consummation of the agency's decision-making process," and (2) is one "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). "Final agency action 'is a term of art that does not include all [agency] conduct such as, for example, constructing a building, operating a program, or performing a contract,' but instead refers to an 'agency's [final] *determination* of rights and obligations whether by rule, order, license, sanction, relief, or similar action.'" *Nat'l Veterans Legal Servs. Program v. United States DOD*, 990 F.3d 834, 839 (4th Cir. 2021) quoting *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013) (citing *Bennett,* 520 U.S. at 177-78). A challenged action fails the first prong if it is "of a merely tentative or interlocutory nature" and does not express an agency's "unequivocal position." *Holistic Candlers and Consumer's Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012) (citations omitted). A non-final action contemplates further administrative consideration or modification prior to the agency's adjudication of rights or imposition of obligations. *See id.* at 945.

SEVP's temporary change of information in the SEVIS database is not a final agency action because the change did not mark the consummation of any decision-making process. SEVIS records are "an electronic means to monitor and verify" certain information about a nonimmigrant student. *See* 8 U.S.C. § 1372(c). Congress expressly instructed that ICE "*shall* use such information to carry out the enforcement functions of the agency." 6 U.S.C. § 252(a)(4) (emphasis added). But, as described by statute, enforcement via immigration proceedings provides notice, opportunity to be heard, and a final, appealable decision. *See* 8 U.S.C. §§ 1229a, 1252(a)(5), (b)(9);

16

*see also* 8 C.F.R. § 1239.1. The conclusion of such enforcement proceedings with a final order by an immigration judge is a consummation of decisionmaking; A change to a record within a DHS database by SEVP is not.

Second, legal consequences do not flow from the mere changing of a SEVIS record. As indicated, the change of a SEVIS record from "active" to "terminated" does not terminate the student's nonimmigrant status or result in the revocation of a nonimmigrant visa. Watson Decl. ¶¶ 11-12. Rather, it is a record keeping action conducted under DHS's authority to collect information and maintain records under 8 U.S.C. § 1372. *See Yunsong Zhao v. Virginia Polytechnic Inst. & State Univ.*, No. 7:18-cv-00189, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018) (describing SEVIS record modification by school's Designated School Official as "clerical duty performed as a preliminary matter"); *see also Yerrapareddypeddireddy v. Albence,* No. CV-20-01476-PHX-DWL, 2021 U.S. Dist. LEXIS 221212, at *22 (D. Ariz. Nov. 16, 2021) (similar as to ICE's termination of a SEVIS record).

Plaintiffs' entire argument that a SEVIS record change is a final agency action is based upon the Third Circuit's decision in *Jie Feng v. ICE*, 935 F.3d 172 (3d Cir. 2019). *See* Pls.' Mot. at 19. *Jie Fang* presented an entirely different scenario from that presented here and thus does not support Plaintiffs' argument for final agency action. The key distinction between *Jie Fang* and the current situation is critical: in *Jie Fang*, ICE sent a letter to the students stating that it had terminated more than just the SEVIS record—it also terminated the aliens' I-20s, their nonimmigrant status, and found that the aliens had committed fraud. *Jie Fang*, 935 F.3d at 174, 177, 183. ICE took these actions because the "university" the students "attended"—the University of Northern New Jersey—was not a university at all, but rather was an undercover ICE sting operation designed to catch brokers of fraudulent visas, which it did. *Id.* at 174. The holding of *Jie*

*Fang* is thus narrow—there is a final agency action when ICE cancels the SEVIS record, the I-20, the nonimmigrant status, and makes a finding of fraud. *See id.* That holding may make sense in the context of a sham university where those claiming to be students attending classes full time never attended any, but those facts are not present here. Plaintiffs' attempt to use the language in the letter sent to the aliens in *Jie Fang* as a representation of DHS's conclusive "view" on the interplay of the termination of a SEVIS record and F-1 nonimmigrant status in every situation is wrong. *See* Pls.' Mot. at 19. Instead, here, as explained, SEVP only changed the SEVIS record from "active" to "terminated," but did not terminate the F-1 nonimmigrant status, did not inform the students that their F-1 nonimmigrant status was terminated, and did not make any findings of fraud. Thus, *Jie Fang* does not support Plaintiffs' case.

To the extent Plaintiffs point to the DHS website to rehabilitate their argument with respect to final agency action, this argument also fails. *See* Pls.' Mot. at 19-20 (citing to Pls.' Exhibit CC, printout from http://studyinthestates.dhs.gov). That website expressly states that "[a] terminated record in the Student and Exchange Visitor Information System (SEVIS) *could* indicate that the nonimmigrant no longer maintains F or M status." *See* Exh. CC at 1 (emphasis added). And while a terminated SEVIS record could lead to a loss of employment authorization, *id.* at 3, employment authorization is a discretionary benefit approved by USCIS. *Kondapally*, 557 F. Supp. 3d at 25–27. Plaintiffs here do not claim to have OPT and lost the benefit as a result of the SEVIS termination, nor do Plaintiffs claim any pending OPT application was denied by USCIS because of the SEVIS termination. *See*, *e.g.*, Exh. A ¶ 3 ("I have one more semester before I can get my degree and also apply for my Optional Practical Training (OPT)"). In fact, Plaintiff Gorrela claims that the SEVIS "termination will not allow [him] to apply for the Optional Practical Training

(OPT)," Exh. B ¶ 12, but then contradicts his statement by confirming that he "recently submitted [an] application for Optional Practical Training (OPT)." *Id.* ¶ 5.

Furthermore, as explained below, the Privacy Act precludes the relief sought by Plaintiffs, but the court in *Jie Fang* never considered the applicability of the Privacy Act in its ruling. Thus, the holding in *Jie Fang* simply is not applicable here and does not show a likelihood of success on the merits of the claim.

Accordingly, Plaintiffs fail to assert a viable claim under the APA because SEVP's temporary change to their SEVIS records was not a final agency action.

### 2. Plaintiffs Cannot Show The Agency's Actions Were Contrary To Law Because They Misapprehend The Scope Of 8 C.F.R. § 214.1(d).

Plaintiffs allege, as the basis for their APA claim, that F-1 student status can only be terminated under the three conditions set forth in 8 C.F.R. § 214.1(d). Pls.' Mot. at 20. But Plaintiffs misunderstand that regulatory section. Part 214.1(d) provides three scenarios in which nonimmigrant status "shall be terminated" automatically, namely "by the revocation of a waiver authorized on his or her behalf under section 212(d) (3) or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." *See* 8 C.F.R. § 214.1(d). Importantly, the section pertains to *all* nonimmigrant statuses, not just F-1 status. *See id.* Indeed, it cannot be specific to SEVIS records as Plaintiffs seem to claim because the section was first introduced in 1969, long before Congress authorized DHS to establish SEVIS. *See* 34 Fed. Reg. 124 (June 28, 1969).

When interpreting a regulation, the plain text of the regulation controls. *See Textron Inc. v. Comm'r of Internal Revenue*, 336 F.3d 26, 31 (1st Cir. 2003). While the plain text of part 214.1(d) provides three mandatory reasons that nonimmigrant status shall terminate, without review, it does

not suggest or limit the availability of additional reasons to end status based on a failure to comply with statutory or regulatory conditions. *See, e.g.*, 8 U.S.C. § 1201(i); 8 C.F.R. § 214.2(f). In other words, while part 214.1(d) provides mandatory reasons to terminate nonimmigrant status for any nonimmigrant, it does not provide *every* reason or basis to terminate nonimmigrant status. *See id.* Accordingly, Plaintiffs' reliance on part 214.1(d) to show that ICE's termination of SEVIS records was arbitrary, capricious or not in accordance with law is incorrect and fails to state a claim for relief and they are unlikely to succeed on the merits of that claim.

### C.    Plaintiffs' Claim Sounds In The Privacy Act And Thus There Is No Waiver Of Sovereign Immunity Under The APA.

Plaintiffs' APA claims also fail because what they truly seek to challenge is the accuracy of the SEVIS record status change, and to challenge the accuracy of a record, a plaintiff must proceed under the Privacy Act.[5] Nor does it matter that Plaintiffs have not pled the Privacy Act and claim it is inapplicable: they cannot avoid the limitations on the APA's waiver of sovereign immunity through creative pleading. *See El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 279 n.35 (D. Conn. 2008) (APA's waiver of sovereign immunity did not extend to actions to correct government records); *Westcott v. McHugh*, 39 F. Supp. 3d 21, 33 (D.D.C. 2014) ("a plaintiff cannot bring an APA claim to obtain relief for an alleged Privacy Act violation"); *Touchstone Rsch. Grp. LLC v. United States*, No. 18-CV-3451 (OTW), 2019 WL 4889281, at *5-6 (S.D.N.Y. Oct. 3, 2019) (dismissing APA claims because APA's general grant of review was not intended to duplicate existing procedures of Privacy Act). As the Supreme Court noted, "[i]t would require the

---

[5] A plaintiff could have other statutory relief in other contexts where a separate statute is complementary to the Privacy Act, such as the Fair Credit Reporting Act, but that is not the situation here. *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63-64 (2024). Here, Plaintiffs seek to use the catchall provision of the APA to gain rights that Congress has intentionally denied them.

suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." *Block v. North Dakota*, 461 U.S. 273, 285 (1983). Here, though Plaintiffs try to avoid the fact that they seek a change to the SEVIS record by focusing on F-1 status, they claim the two are one in the same. Thus, they seek to challenge the SEVIS record data, and such a challenge is barred under the APA. *See El Badrawi*, 579 F. Supp. 2d at 279 n.35; *Westcott*, 39 F. Supp. At 33; *Touchstone Rsch. Grp. LLC,* 2019 WL 4889281, at *5-6.

### 1. Sovereign Immunity

For the sake of completeness, the government provides the following APA sovereign immunity analysis for the Court to show why the cases cited above are correct that the APA's waiver does not extend to Plaintiffs' claims.

The APA's waiver of sovereign immunity is contained in 5 U.S.C. § 702. *Cambranis v. Blinken*, 994 F.3d 457, 462-63 (5th Cir. 2021). Waivers of sovereign immunity must be "unequivocally expressed in statutory text… and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted). The scope of this type of waiver is "strictly construed" in the Government's favor. *Id.* "[T]he 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (quoting *United States* v. *Sherwood*, 312 U.S. 584, 586 (1941)). To invoke the waiver, "the plaintiff must identify some agency action affecting him in a specific way, which is the basis of his entitlement for judicial review" and "the plaintiff must show that he has suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute." *Id.* (quotations/citations omitted). However, § 702 also "contains enumerated exceptions that limit the reach of its general waiver" including that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to

suit expressly or impliedly forbids the relief which is sought." *See id.* at 463, quoting 5 U.S.C. § 702. "According to the Supreme Court, '[t]hat provision prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes.'" *Cambranis*, 994 F.3d at 463 (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (hereinafter "*Patchak*")).

At least one Circuit Court of Appeals has interpreted § 702 and the Supreme Court's decision in *Patchak* to contain three requirements to trigger the "any other statute" exception of § 702: "(1) the statute must address the same type of grievance the plaintiff asserts in his suit; (2) the statute must deal 'in particularity' with the claim, and (3) Congress must have intended the statute to afford the 'exclusive remedy' for that type of claim/grievance." *Cambranis*, 994 F.3d at 463 (citing *Patchak*, 567 U.S. at 216).

2.    **The Plaintiffs' Claims Satisfy The *Cambranis* Test Such That It Meets The "Any Other Statute" Proviso Of § 702 Of The APA.**

***The Privacy Act addresses the same type of grievance.*** The Complaint alleges that Plaintiffs' F-1 status was terminated "through termination in the SEVIS …system." Compl. ¶ 1. The Privacy Act addresses records held in government databases. 5 U.S.C. § 552a(b). It permits an individual to review agency records, request the agency correct them, appeal to the agency head if the amendment is denied, and submit a statement of disagreement with the records. *Id.* § 552a(d)(1) (access); § 552a(d)(2) (amendment); § 552a(d)(3) (appeal to agency head); § 552a(d)(4) (statement of disagreement). Once an individual has exhausted his administrative remedies to amend his records, the Privacy Act contains a consent to suit in federal district court. § 552a(d)(3) (exhaustion of administrative remedies); § 552a(g)(1)(A) (civil remedies). Thus, the first factor of the *Cambranis* test is met.

*The Privacy Act deals "in particularity" with the asserted claims.* The Privacy Act sets forth the contours of the administrative process an agency must follow when an individual requests a record amendment, including submitting a request, the timeline for an agency response, a requirement that a denial includes the basis for the decision, and an appeal if the request is denied. 5 U.S.C. § 552a(d)(2). The Privacy Act also states that agencies must establish particular procedures for the review and amendment process. *Id.* at § 552a(f); *Quinn v. Stone*, 978 F.2d 126, 137 (3d Cir. 1992) (describing the "detailed set of requirements" for amending a record set forth in the Privacy Act). It provides for judicial review of an agency's failure to amend the records, but only after administrative remedies have been exhausted. 5 U.S.C. §§ 552a(d)(1)-(4). It also defines the class of persons who may sue, the venue where suit may be brought, the standard of review, the statute of limitations, and the available remedies including an order directing the agency to amend a record or to provide access to a record, costs, attorneys fees, and in some cases actual damages. *See* 5 U.S.C. §§ 552a(g)(1)-(5); *see also Block*, 461 U.S. at 286 n.22 (indicating that "the balance, completeness, and structural integrity" of a statutory provision "belie[s] the contention that it was designed merely to supplement other judicial relief."). Thus, the second factor of the *Cambranis* test is met.

*Congress intended for the Privacy Act to provide the exclusive remedy in these types of challenges.* The completeness of the Privacy Act scheme to view, challenge, and seek amendment of records, and to pursue civil remedies in court if unsuccessful—shows that Congress intended the Privacy Act to provide the exclusive remedy for claims such as those advanced by Plaintiffs. That conclusion is consistent with the legislative history in which Congress explained that the Privacy Act contained provisions "for the exercise of civil remedies by individuals against the Federal Government through the Federal courts to enforce their rights, with the burden of proof

resting on the government." H.R. Report 93-1416 (Oct. 2, 1974) at 4 (*see* Privacy Sourcebook[6] at 297). The House Report further explained that "[t]he section authorizing civil actions by individuals is designed to assure that any individual who has been refused lawful access to his record or information about him in a record or has otherwise been injured by an agency action which was based upon an improperly constituted record, will have a remedy in the Federal District courts." *Id.* at 17 (*see* Privacy Sourcebook at 310). When reconciling the House and Senate versions of the bill, the committee explained the remedies available under the Privacy Act to correct or amend a record, including the applicable standard of proof: "These amendments represent a compromise between the two positions, permitting an individual to seek injunctive relief to correct or amend a record maintained by an agency. In a suit for damages, … the standard for recovery of damages was reduced to 'willful or intentional' action by an agency." *See* Privacy Sourcebook at 862 (citing from the Congressional Record—Senate, Dec 17, 1974— Senate Considers House Substitute of Text of H.R. 16373 to S. 3418 and Adopts Compromise Amendments Identical to those Considered in House).

Thus, all three elements of the *Cambranis* test are met by the Privacy Act, and it qualifies as "any other statute" under § 702.

### 3. The Privacy Act Expressly Precludes The Relief Sought.

The final aspect of the § 702 sovereign immunity analysis is whether the statute at issue— the Privacy Act— "forbids the relief sought." 5 U.S.C. § 702. That is true here. The Plaintiffs are nationals of India and China. Congress intentionally restricted *who* may challenge purportedly

---

[6] S. Comm. on Gov't. Operations & H.R. Comm. on Gov't. Operations, 94th Cong., Legislative History of the Privacy Act of 1974 S. 3418 (Public Law 93-579): Source Book on Privacy at 4 (Comm. Print 1976) (hereinafter "Privacy Sourcebook") *available at* https://www.justice.gov/opcl/paoverview_sourcebook/download.

erroneous records under the Privacy Act to U.S. citizens and Lawful Permanent Residents, 5 U.S.C. § 552a(a)(2) (defining "individual"); *see* H.R. 93-1416 at 11 (Privacy Sourcebook at 304) (explaining the law "would not affect any other foreign nationals."), and later expanded that to nationals of most EU countries. 5 U.S.C. § 552a note; 82 Fed. Reg 7860-61 (Jan. 23, 2017) (adding countries covered by remedial actions); 84 Fed. Reg. 3493-94 (Feb. 12, 2019) (same). Congress and the Attorney General have not extended that designation to India and China, thus barring Plaintiffs from the relief sought. *Raven v. Panama Canal Co.*, 583 F.2d 169, 170 (5th Cir. 1978) (applying plain meaning to definition of individual in § 552a(a)(2) and holding that "since the plaintiff is a Panamanian citizen and thus not an 'individual' within the meaning of the Privacy Act, she is not entitled to compel access under its authority."); *see also El Badrawi*, 579 F.Supp.2d at 279 n. 35 ("the Privacy Act implicitly (if not explicitly) forbids nonresident aliens … from suing federal agencies to correct their records.").

Thus, the Privacy Act triggers the exception of § 702 of the APA that sovereign immunity is not waived if "any other statute explicitly or impliedly forbids the relief sought." 5 U.S.C. § 702; *Patchak*, 567 U.S. at 216; *Cambranis,* 994 F.3d at 462-63. "[W]hen Congress has dealt in particularity with a claim and [has] intended a specified remedy—including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." *Patchak*, 567 U.S. at 216 (alteration in original, quotations/citations omitted). This Court lacks jurisdiction over Plaintiffs' Privacy Act claim. [7]

---

[7] The Privacy Act also contains a jurisdictional requirement that a plaintiff must exhaust administrative remedies to correct a record before seeking relief in district court, which has also not been met. §§ 552a(2)-(3). *See* 5 U.S.C. § 552a(d)(3); *Taylor v. U.S. Treas. Dep't*, 127 F.3d 470, 475 (5th Cir. 1997) (per curiam) (statutory mandate to exhaust administrative remedies is jurisdictional); *Hill v. Air Force,* 795 F.2d 1067, 1069 (D.C. Cir. 1986) (plaintiff seeking to amend inaccurate records must first exhaust); *Barouch v. United States DOJ*, 962 F. Supp. 2d 30, 67 (D.D.C. 2013) (exhaustion requirement of Privacy Act is jurisdictional).

III.    **The Balance Of Equities And Public Interest Favor The Government.**

The balance of equities and public interest factors "merge when the Government is the opposing party." *See Nken*, 556 U.S. at 435. A court "'should pay particular regard for the public consequences'" of injunctive relief. *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Plaintiffs bear the burden of demonstrating that the balance tips in their favor, but provide only cursory reasoning on this point. Pls.' Mot. at 24. Plaintiffs contend that the government has "no legitimate interest" in the SEVIS terminations. *Id.* But "[c]ontrol over immigration is a sovereign prerogative." *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 750 (9th Cir. 1992). Congress vested significant authority and discretion in the Secretary of Homeland Security to administer the immigration laws, including the authority to conduct a program to track foreign students, *see* 8 U.S.C. § 1372, and to use that program for enforcement purposes, 6 U.S.C. § 252(a)(4). The public interest in enforcement of United States immigration laws is significant. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981). Plaintiffs' argument amounts to a dispute with how DHS chooses to implement the SEVIS program and the actions it takes as part of its enforcement mission, and does not show that these merged factors weigh in Plaintiffs' favor. Any order that enjoins a governmental entity from enforcing actions taken pursuant to statutes enacted by the duly elected representatives of the people constitutes an irreparable injury that weighs heavily against the entry of injunctive relief. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977). Granting Plaintiffs the extraordinary relief that they seek will effectively undermine DHS's authority to enforce the provisions of the Immigration and Nationality Act relating to the Department's ability to update and maintain the information in SEVIS and, as such, to change SEVIS record status to

"terminated" as needed, in order to carry out the purposes of the program. The public interest would not be served by the Court commandeering the authority of the agency.

Moreover, Plaintiffs conflate the public interest factor with likelihood of success on the merits by arguing that there is a public interest in ensuring DHS follows the law. Pls.' Mot. at 24. Such circular reasoning—that it is against the public interest because Plaintiffs believe they have a likelihood of success on the merits—cannot satisfy the fourth *Winter* factor because it would render that factor superfluous in any lawsuit seeking to enjoin government action. *USA Farm Labor, Inc. v. Micone*, No. 23-2108, 2025 WL 586339, 2025 U.S. App. 4200 at *12-13 (4th Cir. Feb. 24, 2025). Indeed, as explained, Plaintiffs have not demonstrated a likelihood of success on the merits of their claims.

Finally, Plaintiffs' SEVIS records have been reactivated. Exh. 1. Accordingly, any claim that Plaintiffs are unable "to complete their studies and participate in practical programs," and face "severe financial hardships, and potential detention" do not tip the balance in Plaintiffs' favor.

## IV. Plaintiffs' Claims Related To Class Certification Are Outside The Scope Of The Preliminary Injunction Motion.

Plaintiffs assert that they "have demonstrated eligibility for class certification for purposes of preliminary injunctive relief." ECF No. 5-1 at 25. They are wrong. Plaintiffs that seek class certification bear the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that the plaintiffs have borne their burden. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 158–61 (1982). Here, Plaintiffs have not met that burden because they have only moved for class certification. *See* ECF No. 4. Under the briefing schedule endorsed by the Court, Defendants' class certification opposition brief is due on May 9, 2025, with any reply brief due May 13, 2025. *See* Minute Order, April 25, 2025. Thus, Plaintiffs cannot plausibly argue that they have demonstrated eligibility for class certification "for purposes of

preliminary injunctive relief." Moreover, Plaintiffs' request for a "provisional class" does not change this analysis. This is because in order for a court to grant a provisional class, the plaintiffs must still satisfy all of the requirements of Rule 23. *See Damus v. Nielsen*, 313 F. Supp. 3d 317, 329 (D.D.C. 2018) (citing *Berge v. United States*, 949 F. Supp. 2d 36, 49 (D.D.C. 2013)). Again, because the parties have not yet briefed Plaintiffs' claims of class certification (provisional or not), their assertions here related to class certification are outside the scope of the preliminary injunction motion.

## V.    The Court Should Require Plaintiffs To Post A Bond.

Pursuant to Rule 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *see also Global NAPs, Inc. v. Verizon New England, Inc.,* 489 F.3d 13, 20-21 (1st Cir. 2007). A bond posted for a preliminary injunction is viewed as a contract in which "the court and Mr. Liu 'agree' to the bond amount as the 'price' of a wrongful injunction." *Global NAPs, Inc.*, 489 F.3d at 21 n. 5 (internal citation omitted). As a result of the posting of the bond, a presumption arises that damages will be awarded from those posted bond amounts in order for defendants "to receive compensation for their damages in cases where it is later determined that a party was wrongfully enjoined." *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994); *see also Global NAPs, Inc.*, 489 F.3d at 23.

Defendants respectfully request that to the extent the Court grants injunctive relief, it requires Plaintiffs to post security during the pendency of the Court's Order, in the event it is later determined that Defendants were wrongfully enjoined.

The risk of harm here is not insubstantial, and Defendants respectfully renew their request that the Court require that Plaintiffs post security in this matter. The Visa Bond Pilot Program is

instructive in determining the appropriate bond amount. Visa Bond Pilot Program, 85 Fed. Reg. 74,875 (Nov. 24, 2020) (to be codified at 22 C.F.R. pt. 41). In implementing this program to "help assess the burden on government agencies and identify any practical challenges related to visa bonds" for aliens who overstay their temporary nonimmigrant business visitor/tourist (B-1/B-2) visas, the State Department has deemed appropriate for the covered visa applicants to post a bond in the amount of $5,000, $10,000, or $15,000. *See id.* at 74,877. Because visa overstays "place significant strain on Department of Justice and [DHS] resources," the program provides:

> In setting the [bond] amounts, the Department took into consideration … the full Immigration Enforcement Lifecycle cost (including mission support costs) ending with removal, as computed by DHS at approximately $14,000 per alien, and the total cost per alien associated with just the removal process, computed by DHS as $2,194. The Department viewed these costs as relevant, because an alien who overstays his or her visa and must be removed requires the U.S. government to incur immigration enforcement-related costs that otherwise would not be incurred.

*Id.* at 74,876, 74,879. Accordingly, a bond in the amount of $5,000, $10,000, or $15,000 would be appropriate here, given that Plaintiffs have requested that Defendants refrain from detaining them during the pendency of this litigation, and to the extent that Plaintiffs request that Defendants refrain from initiating removal proceedings against them.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' request for a preliminary injunction in its entirety.

DATE:  May 1, 2025                              Respectfully submitted,

                                                YAAKOV M. ROTH
                                                Acting Assistant Attorney General

                                                DREW ENSIGN
                                                Deputy Assistant Attorney General

                                                By: *s/ Glenn M. Girdharry*
                                                GLENN M. GIRDHARRY
                                                Assistant Director
                                                United States Department of Justice
                                                Civil Division
                                                Office of Immigration Litigation
                                                General Litigation and Appeals
                                                P.O. Box 868, Ben Franklin Station
                                                Washington, DC 20044
                                                Tel: (202) 532-4807
                                                Email: glenn.girdharry@usdoj.gov

                                                ALESSANDRA FASO
                                                ALEXANDRA MCTAGUE SCHULTE
                                                Senior Litigation Counsels

## CERTIFICATE OF SERVICE

I certify that on May 1, 2025, electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record:

SangYeob Kim
Chelsea Eddy
Gilles R. Bissonnette
American Civil Liberties Union of New Hampshire
18 Low Ave
Concord, NH 03301
603 224-5591
SangYeob@aclu-nh.org
chelsea@aclu-nh.org
Gilles@aclu-nh.org

Carol Garvan
Zachary L. Heiden
American Civil Liberties Union Foundation
PO Box 7860
Portland, ME 04112
207-619-8687
cgarvan@aclumaine.org
zheiden@aclumaine.org

Fermin L Arraiza-Navas
American Civil Liberties Union
416 Ponce de Leon Avenue, Suite 1105
San Juan, PR 00918
787-753-8493
arraizanavasfermin@gmail.com

Lynette J. Labinger
Labinger Law Office
128 Dorrance St, Ste Box 710
Providence, RI 02903
401-465-9565
ll@labingerlaw.com

Ronald L. Abramson
Shaheen & Gordon PA
1155 Elm Street, Suite 300
Manchester, NH 03101
603-792-8472
rabramson@shaheengordon.com

*s/ Glenn M. Girdharry*
GLENN M. GIRDHARRY
Assistant Director
United States Department of Justice
Civil Division

31